[No. 96.   Decided December 10, 1890.]

CASCADE FIRE & MARINE INSURANCE COMPANY v. JOURNAL PUBLISHING COMPANY.

FIRE INSURANCE — RIGHT OF ACTION — CONDITIONS OF POLICY — WAIVER — EVIDENCE OF VALUE.

Under an insurance policy which provides that any loss incurred shall not be payable until sixty days after notice and satisfactory proof thereof, a suit brought against the insurance company before

the expiration of sixty days after proof and notice is unwarranted, unless there has been an unqualified refusal on the part of the company to pay the loss.

A declaration by a trustee of an insurance company, showing hostility to the payment of a certain loss under a policy of insurance, will not be regarded as the refusal of the company to pay, unless he is specially charged by the board of trustees with the duty of communicating such decision to the policy holder.

In an action on an insurance policy, where there is no other evidence of the value of the property destroyed by fire than the proof of loss made by the claimant, as required by the terms of the policy, the plaintiff should be non-suited.

Where an insurance policy is conditioned to be void if assigned in case of sale, unless the assignment is approved by the president or secretary, the policy becomes forfeited on sale and transfer of the property without such approval, unless there is waiver thereof.

Where a policy of fire insurance is made payable in case of loss to the agents of the insurance company to secure advances made by them to the insured, the consent of the agents to an assignment of such policy does not amount to a waiver of the condition as to assignment, as the agents are beneficiaries under the policy, and can not bind the company by their acts.

 *Appeal from Superior Court, King County.*

The facts are fully stated in the opinion.

*Preston, Albertson & Donworth,* for appellant.
*Lewis & Gilman,* for appellee.

The opinion of the court was delivered by

Stiles, J.—In this case it clearly appears that proof of the loss was made July 10, 1889, and the terms of the policy were that the loss should not be payable until sixty days thereafter. The action was commenced September 6, 1889, on the fifty-eighth day after proof of loss was made. Under the letter of the policy, therefore, the suit was premature. But it was agreed by both sides, and we believe correctly, as matter of law, that under such contracts as this, as the limitation is solely for the benefit of the insurer for the purpose of enabling him to examine

into the circumstances of the loss, and satisfy himself of
the justness of the claim, and prepare himself for payment,
so, if at any time before the expiration of the time limited
the insurer has so satisfied himself, and thereupon commu-
nicates to the insured his unqualified refusal to pay the
loss, all further claim to indulgence under the stipulation
is waived, and suit may be forthwith commenced. Ac-
cordingly in this case the complaint alleged a demand and
a positive refusal to pay, which laid upon the plaintiff the
burden of proving such a refusal as the law requires, and,
upon the defendant's motion for a non-suit, made it in-
cumbent upon the court to say whether or not any evidence
had been produced tending to show a refusal. The court
found against the defendant on this proposition, and its
exception to this ruling requires that we examine the testi-
mony on that point. The substance of the evidence in the
record is, that one of the officers of the plaintiff corpora-
tion, after making the proof of loss, called several times
upon the secretary of the insurance company and inquired
as to the intentions of the latter company with regard to
the policy in question. The secretary suggested as a pos-
sible objection that the transfer of the policy from the
original insured had not been approved, and mentioned the
probability that the matter would be referred to a commit-
tee of trustees to report. Several other visits of the ap-
pellee's agent resulted in nothing more definite, except that
a committee had been constituted to consider the policy,
which committee, it was rumored to the appellee, had re-
ported favorably to the payment of the loss. No attempt
was made to establish the truth of this rumor, however,
and it is material only as it shows the information charge-
able to the plaintiff and under which the suit was brought.
Thus far the testimony was nothing more than what might
have been expected as introductory to some positive decla-
ration, and, being unsupported, was of no force whatever.
Finally, however, the same agent of the plaintiff met one

of the insurance company's trustees upon the street, and got into conversation with him upon the subject of the company's probable action, whereupon the trustee, who was apparently in some passion over certain remarks made by the president of the Journal Company derogatory to home insurance companies, remarked that "he guessed he would see what they would do about this matter," and there the subject was dropped. The introduction of this remark of the trustee was allowed by the court over objection, and is assigned as error.

Regarding the trustee of the corporation as in some sense its agent, as he undoubtedly was, he would not, unless specially charged by the board of which he was a member with the duty of communicating its decision to the policy holder, be authorized to bind it by his declaration, and still less could his mere street talk be taken as the expression of his principal. An agent's declaration binds his principal only when he is intrusted with the conduct of the particular matter in hand, and while he is engaged about the performance of the duty assigned to him. In this instance, the witness was asked what reason the trustee gave for not paying the demand, from which the court probably gathered that some formal declaration would be shown, as really coming from the company. But the witness' answer was not responsive, and did not touch the point of inquiry. This left the case with no showing of a refusal to pay, and, therefore, no warrant for the commencement of the action on the 6th day of September.

2. The proof of loss made by the claimant under the policy was no evidence, at the trial, of the property lost in the fire, or of its value. It was admitted, if at all, upon the cross examination of plaintiff's witness, and at the request of the defendant, to show by the *jurat* attached to it, ·the precise date on which it was made—July 10th. The insurance was on "office furniture and library, $200; stones, press and tables, $300; type, $500." By the proof

of loss it is alleged that the furniture and library had a sound value of $500, and the loss was $264.60; the sound value of the stones, press and tables was $256, and the loss was the same, while the types were worth $2,000, and the loss was $846.55. The total sound value was $2,856; the loss, $1,467.15, and the policy was $1,000. The seventh paragraph of the complaint alleged the loss to have exceeded $1,000, and it was for the plaintiff to sustain that allegation with competent proof. We doubt whether the proof of loss was intended to be proof of value, when it was introduced, and even if it had been it could have served no such purpose. The proof of value having been omitted there was no case for the jury.

3. The points discussed previously affect merely the plaintiff's recovery in this action; the remaining point goes to the right of the plaintiff to maintain any action at all. The policy in question was in the usual form of insurance contracts against loss by fire, being a printed blank, one of many like it, with the signatures of the president and secretary already affixed, and only requiring the signature of the local agent and its delivery to make it a contract in full force as the obligation of the company. As originally issued, December 31, 1888, it insured the firm of Begg & Meany, who were then the owners of the property, "loss, if any, payable to G. E. Miller & Co., as their interest may appear." This firm of G. E. Miller & Co. were the local agents for the issuance of policies of the Cascade Company, and they had some kind of a lien upon the goods of Begg & Meany for money advances. Thus, in the beginning, this policy was issued by Miller & Co. to themselves, to secure their claim for advances, and it remained in their possession for several months, during which the property was sold and transferred, first to one Kittenger, and secondly to the Journal Publishing Company. The premium was paid to the insurance company at once by Miller & Co., and charged up on their books as an additional claim against

Begg & Meany. Miller & Co. notified the insurance company of the issuance of the policy, thereby, of course, conveying to it information of their relation to the policy and to the property insured, and the company made no objection that its agents had thus insured themselves. The policy was voidable at the option of the company within a reasonable time, upon return of the premium; but the company did not elect to cancel it, and we hold the policy good under the circumstances. But on the other hand, agents of an insurance company, who place themselves in such a relation to a policy certainly very greatly endanger the insured in case of loss, since all the rulings of the courts as to waiver of the terms of a policy, through knowledge of the insurer's agents of subsequent facts warranting a cancellation, are rendered of no avail when the agent is himself one of the parties to the contract. In such a case knowledge of the agent is not knowledge of the principal; but to withhold knowledge of any material fact becomes a fraud on the principal, sufficient to void the policy. In such cases the general rules of agency, and those particular rules which pertain to matters of insurance, forbid that the agent should occupy any place other than that of an interested third party, neither whose acts nor whose knowledge are imputed to the principal. Begg & Meany were chargeable with notice of this state of things; so was Kittenger, and so was the Journal Publishing Company, and each of them was bound to know that so long as Miller & Co. remained the beneficiaries of the policy no subsequent knowledge of theirs concerning the property covered by this policy, or concerning the policy itself, would be of any force whatever against the insurance company, unless actually communicated to its officers. Miller & Co. retained the policy in their possession until after the property had passed into the possession of the publishing company. Then they sought out Begg & Meany and got their signature to an assignment printed in blank form on the back of their

policy, as follows : "For value received we hereby transfer to the Journal Publishing Co. all our title and interest in this policy of insurance," and again the policy was returned to Miller & Co.'s safe, for Begg & Meany had not paid the premium and Miller & Co. still had their lien. But an arrangement was made by which the publishing company agreed to pay the amount advanced by Miller & Co. for the premium, and, upon that, the policy was delivered to the publishing company.

Now in the body of this policy there is a clause as follows: "Whenever this policy may have become void from any cause it shall not be revived or reinstated in any way, except by a special contract for such reinstating, in writing thereon, or by the issue of a new policy," and on the back of the contract, as a part of the blank assignment, there was printed as a heading to it "Assignment of policy in case of sale. Not good except approved by the president or secretary of this company." This is the blank to which Begg & Meany's signature was affixed but which was never approved by the president or secretary of the Cascade Company, or presented for their approval. The sale of the insured property and its transfer to third persons rendered the policy void, and the purpose of the blank assignment was to provide an acceptable form of reinstatement under the clause of the policy first quoted. Perhaps the approval of the assignment in this manner was not the only way in which a reinstatement could be accomplished. The plaintiff endeavored to show a course of dealing which might, in case of another policy, tend to support a revival of the policy upon the approval of the agents who issued it, under some of the decisions of courts on the subject of waivers. But in this case, aside from the fact that the agent did not sign the approval, we have held above that, as to this policy Miller & Co. were not agents, but principals. Possibly under some of the decisions, if Miller & Co. or the publishing company had communicated the fact of the trans-

fer to the latter with a request for reinstatement, mere failure to announce its unwillingness would be held sufficient to charge the insurer, if the insured were prevented from getting other insurance, by its delay in acting. But such is not this case. Miller & Co. kept a policy book, and made a daily report of business to the company. But very curiously the policy book showed no entry whatever of the assignment of Begg & Meany, and it did not appear that the insurance company ever knew of the assignment or of the transfer of the property until after the fire. This neglect was not the neglect of the company, but of the insured and their assignee, who knew Miller & Co.'s position with regard to the policy, and had under their very eyes the notice that an express approval was required. The head office of the company was in the city of Seattle, only a short distance from the publishing company's office, where the matter could have been settled in a few minutes. It was the right of the insurer to know the individual holding its policy, which was not a floating promise to pay into the hands of any holder with no other condition than loss of the property. Moreover, although this policy was issued in December, 1888, and the assignment of Begg & Meany was dated April 13, 1889, not even then nor until after the fire, June 6, 1889, was there any offer to pay the premium. Miller & Co., as was mentioned, had advanced the premium to the company and charged Begg & Meany. Later they charged the publishing company, and aftér the fire the latter paid the debt. This we regard as making no change in the *status* of affairs. It was not in any sense an acceptance of the premium by the insurance company, which had been fully paid months before. Miller & Co. at that time had actually ceased to be the agents of the Cascade Company for any purpose. But they were not at any time agents to bind the company by any act or statement of theirs in connection with this policy.

This aspect of the case makes it unnecessary for us to

refer to many other features of it, involving numerous rulings of the court, and the charge to the jury. The testimony of plaintiff was uncontradicted, so that defendant's motion for a non-suit raised a question for the court as to whether any material allegation was unsupported, the answer to which must have been that no renewal, revival or reinstatement of the policy had been shown after the sale of the insured property by Begg & Meany, based on the admission that Miller & Co. were the real insured to an indefinite extent, as expressed in the policy. This would have sustained the motion, and the non-suit should have been allowed.

In considering this case, although the industry of counsel presented an immense array of cases, we have not seen it to be necessary to found our decision, so far as the last point is concerned, upon any of the so-called principles of insurance law waivers. Cases, we find, can be cited for the waiving of nearly or quite every possible clause of a policy, but upon examination it will be discovered that almost every case of this kind rests upon some peculiar state of facts of its own. The enforcement or non-enforcement of a policy of insurance, although a purely legal matter in form, is rarely without its equitable features, and so, in spite of the strongest prohibitions contained in the express language of policies against many things on the part of the insured, if the agent of the insurer gets knowledge of them there must be a prompt cancellation or the policy will be held to stand, on account of the waiver. But here is rather a case of agency than of insurance. The policy, by reason of the knowledge of the secretary of the company that it had been issued, and to whom, and for whose benefit, was good for want of objection; but, by the assignment and transfer of the property, it became suspended and of no effect, until application was made to revive in the hands of the assignee and purchaser; not an application to the co-party insured, Miller & Co., but to the company's

proper officer. For want of any such application the policy never revived, and there was no right of action upon it.

The judgment is reversed, with direction to the court below to sustain the motion for non-suit. Costs to the appellant.

SCOTT, HOYT and DUNBAR, JJ., concur.

ANDERS, C. J., not sitting.