[No. 28108.    Department One.    July 15, 1941.]

W. W. CONNER COMPANY, *Appellant*, v. McCOLLISTER & CAMPBELL, INC., *et al.*, *Respondents.*[1]

*Caldwell, Lycette & Diamond,* for appellant.
*Wright & Wright,* for respondents.

[1]Reported in 115 P. (2d) 370.

BLAKE, J.—Plaintiff brought this action to recover a brokerage commission upon a surety bond executed by defendant United States Fidelity and Guaranty Company, a corporation, guaranteeing the performance of a contract by the Acme Construction Co., Inc., which will hereinafter be referred to as Acme. The guaranty ran to the Western Pipe and Steel Company of California, which will hereinafter be referred to as Western Pipe.

In December, 1936, the latter company was contemplating entering a bid with the city of Everett for the construction of the proposed Sultan river pipe line. Bids for the project were to be opened December 15th. Intending, in case it was the successful bidder, to sublet a portion of the job, Western Pipe invited bids for all of the work except the laying and welding of the pipe. Acme submitted a bid to Western Pipe for this portion of the job in the approximate amount of three hundred thousand dollars. The bid was satisfactory to Western Pipe, but before it submitted its own bid to the city, it wanted to be assured that Acme could procure a surety bond guaranteeing the performance of its contract. Acme's financial rating was not such that it could procure a bond in that amount without indemnity. So, A. J. Goerig, the controlling spirit of Acme, laid the situation before H. I. Miller, whose financial rating was well known to defendant McCollister & Campbell, Inc., the general agent for United States Fidelity and Guaranty Company in Seattle. After investigating the project, Miller agreed to execute an indemnity agreement in behalf of Acme.

On the evening of December 14th, Goerig and Miller went to the office of McCollister & Campbell to arrange for a bond guaranteeing the performance of such contract as would be entered into between Acme and the Western Pipe in case the latter was the successful

bidder on the project. D. H. McCollister, agreeing to write the bond, wrote the following letter:

"December 15th, 1936.
"Mr. Robert Plageman, Representative
"Western Pipe & Steel Co.
"San Francisco, Cal.
"Dear Sir:

"We agree to execute bond for the Acme Construction Company on sub-contract from you on Sections of Sultan River Pipe Line Project No. 3 for the City of Everett at the unit prices shown on its attached bid for specific items. These bids are to be opened by the City of Everett on December 15th, 1936, at 10 A. M.

"UNITED STATES FIDELITY AND
GUARANTY COMPANY
"By—D. H. McCollister
"Attorney-in-Fact."

Though this letter is dated December 15th, it was delivered to Plageman by McCollister and one Grover C. Winn on the evening of December 14th (Winn was a broker with desk room in the McCollister & Campbell office).

The bids were opened at Everett the next day—December 15th. Western Pipe got the job and, on January 8, 1937, entered into a contract with Acme as contemplated. On the same day, McCollister, as agent for United States Fidelity and Guaranty Company, executed and delivered to Western Pipe a bond guaranteeing the faithful performance of the contract by Acme. In the meantime, on or about December 17, 1936, Miller signed an application for a bond, which amounted to an agreement on his part to indemnify United States Fidelity and Guaranty Company for any loss it might sustain as surety on Acme's bond to Western Pipe. This application was not signed by Acme until January 7, 1937. Before the last-mentioned date, no one connected with the plaintiff company had made

any contact whatsoever with McCollister & Campbell in connection with the transaction.

The attorney for the plaintiff company, however, had drawn the contract between Acme and the Western Pipe and, also, the bond form which the United States Fidelity and Guaranty Company executed in behalf of the former. Although plaintiff takes the position that these services were rendered at the instance and in behalf of McCollister & Campbell, yet the circumstances under which the contract and bond were drawn are quite illuminating.

The plaintiff was employed by Western Pipe to procure the bond required from it by the city of Everett. This bond was in excess of one million dollars. It is apparent from the evidence that W. W. Conner of the plaintiff company rendered all possible assistance to Western Pipe in the submission of its bid and in the drawing of contracts and bonds in connection with the project. On January 7th or 8th, Conner sent McDonald, one of his men, down to the McCollister & Campbell office with bond form, which McCollister executed as agent for the United States Fidelity and Guaranty Company and returned to McDonald, together with the application which had theretofore been signed by Miller. McDonald left copies of the bond with McCollister at that time and later on returned the application (signed by Acme as of January 7th), together with a copy of the subcontract between Western Pipe and Acme.

Acme carried out its contract, completing it early in 1938. In the meantime, McCollister & Campbell had some difficulty in collecting the premium due from Acme, which amounted to $4,755. They sent out a statement each month, but it seems that plaintiff was also billing Acme for it. However, Acme made the final payment of five hundred dollars on March 9,

1938. A few days before that, McDonald brought five hundred dollars into McCollister's office and tendered it as the final payment on the premium. McCollister refused to accept it, "because he owed me nothing on account of it." Under date of May 3, 1938, plaintiff wrote McCollister & Campbell a letter in which it claimed:

" . . . We understand the original premium on this bond has been received by your office and we can see no reason why there should be any further delay in your paying us our commission in this case.

"As you well know, we obtained the application for this bond, assisted in drawing the contract and bond and presented the bond to you for execution. Not only did your Mr. John C. McCollister and the writer have an absolute understanding on this matter but it was agreed between us that inasmuch as McCollister & Campbell claimed that they had done some work in this instance that, therefore, we would divide the commission fifteen percent to McCollister & Campbell, Inc., and fifteen percent to W. W. Conner Company."

May 4th, McCollister & Campbell replied, categorically denying any agreement to pay plaintiff a commission. Shortly thereafter, plaintiff instituted this action to recover fifteen percent of the premium paid by Acme. The cause came on for trial before a jury, which returned a verdict for plaintiff in the amount claimed. The defendants interposed a motion for judgment notwithstanding the verdict, which the court granted. From a judgment dismissing the action, plaintiff appeals.

The appeal presents two questions: (1) Was there sufficient evidence to sustain the verdict that appellant was the procuring cause in bringing the application for Acme's bond into the office of McCollister & Campbell? (2) Was there sufficient evidence, to sustain the verdict, of an express agreement by McCollister & Campbell to pay appellant a commission?

■ First. We think the first question may be disposed of quite summarily. There is not a scintilla of evidence that appellant or any of its officers or employees had anything to do with, or knew anything about, the visit of Goerig and Miller to the office of McCollister & Campbell on December 14th. On the contrary, Goerig had been procuring bonds from McCollister & Campbell for three years previously, and Miller had done business with them for twenty years. That they went to McCollister & Campbell without the intervention of any third party, there can be no doubt. And at that time, December 14th, the contract for the bond was consummated when McCollister, as attorney in fact for United States Fidelity and Guaranty Company, wrote the letter to Western Pipe which we have quoted. To our minds, these facts demonstrate that appellant was not the procuring cause of the business going to the office of McCollister & Campbell.

■ Second. So, if plaintiff is to recover, it must be on the theory that there was an express agreement on the part of McCollister & Campbell to pay a commission. The only evidence that there was any such agreement is contained in appellant's letter of May 3rd, in which it laid claim to a commission. This letter, of course, was a self-serving declaration and was inadmissible. *Moritz v. Herskovitz,* 46 Wash. 192, 89 Pac. 560. But it was admitted without objection on the part of respondents. Appellant contends, therefore, that it is in the record for whatever probative value it may have, and that it is for the jury to determine what its probative value is.

Although there is some authority to the contrary, yet it is a generally accepted rule that *hearsay* evidence, admitted without objection, has the force and effect of proper evidence and is to be accorded its natural probative value; and that such evidence alone

is sufficient to sustain a verdict or a finding of fact. 20 Am. Jur. 1036, § 1185. *Barlow v. Verrill,* 88 N. H. 25, 183 Atl. 857, 104 A. L. R. 1126 and annotation p. 1130. This court is committed to the rule at least in so far as the propriety of according such evidence its natural probative vale is concerned. *State ex rel. Race v. Cranney,* 30 Wash. 594, 71 Pac. 50; *Atkins v. Clein,* 3 Wn. (2d) 168, 100 P. (2d) 1, 104 P. (2d) 489.

While, in a number of the cases cited in the 104 A. L. R. annotation, the rule is broadly stated to apply to "incompetent evidence," generally, we have found no case where it has been applied to self-serving declarations admitted without objection. Though self-serving declarations are sometimes characterized as hearsay, we think there is sound reason for limiting the application of the rule to what is generally understood and characterized as hearsay evidence. Discussing the inadmissibility of self-serving declarations, it is said in 2 Jones, Commentaries on Evidence (2d ed.), 1636, § 895:

"It would obviously be unsafe if parties to litigation, without restriction, were allowed to support their claims by proving their own statements made out of court. Such a practice would be open to all the objections which exist against the admission of hearsay in general, *and would also open the door to fraud and to the fabrication of testimony.*" (Italics ours.)

The vice of according probative value to such evidence is not obviated nor diminished because it may have been admitted without objection. It gains nothing in vitality or in integrity by reason of its admission.

While no case directly in point has come to our attention, there are a couple which support the view that a self-serving declaration, admitted without objection, is insufficient in itself to establish liability. *Ziebarth v. Manion,* 161 Wash. 201, 296 Pac. 561;

*Morton v. Barney,* 140 Ill. App. 333. In the latter case, the court made the following statement, which is peculiarly pertinent to the facts in the case at bar:

"Nor can a broker by letters of his own addressed to a possible purchaser or by writing an owner that he has offered the property to such proposed purchaser make a contract of employment for himself entitling him to commissions. It takes two to make a contract of that kind, and an owner is under no obligation to respond to every letter he may receive from a real estate broker whom he has not employed."

In the instant case, the respondents did reply immediately—emphatically repudiating appellant's claim for commission. We are of the opinion that appellant's letter of May 3rd had no probative value either for the purpose of establishing an agreement for a commission or for showing that appellant was the "procuring cause in the transaction."

Judgment affirmed.

ROBINSON, C. J., MAIN, SIMPSON, and DRIVER, JJ., concur.