[No. 34072.   Department One.   August 15, 1957.]

CHARLES HURST *et al.*, *Respondents*, v. WASHINGTON CANNERS Co-op, *Appellant*.[1]

*Cheney & Hutcheson*, for appellant.

*Paul Clair Edmondson*, for respondents.

[1]Reported in 314 P. (2d) 651.

SCHWELLENBACH, J.—This action was commenced to recover damages for personal injuries sustained by plaintiff wife when she slipped on the stairway in the defendant's cannery. The complaint alleged that the defendant's negligence was the proximate cause of her slipping. Defendant denied the allegations of negligence and affirmatively alleged contributory negligence and assumption of risk.

Mrs. Hurst was employed by defendant on September 10, 1954, as a canning line operator. She worked an eight hour day from seven o'clock in the morning until eleven, and then from eleven-thirty until three-thirty in the afternoon. She testified that on September 13, 1954, toward the end of the thirty-minute lunch period, she was in the women's restroom on the second floor of defendant's cannery, when the warning whistle blew at eleven-twenty-five, informing the employees that they had five minutes to return to their place of work; that she slipped as she was descending the stairs, sustaining serious injuries, but was able to regain her balance without falling. During her direct examination, she testified that she did not observe the condition of the stairs when ascending them before the accident, but that after slipping she noticed that the stairs were slippery with peach juice and that a peach peeling had caused her to slip. However, it was brought out in cross-examination that in a pretrial deposition, she had stated that she had noticed the condition of the stairs when ascending them immediately before the accident.

Under cross-examination, the following occurred:

"Q. I will ask you whether on page 5 of your deposition, did you testify as follows: I asked the question, 'You say you were in the lunch room?' Your answer, 'I mean the rest room, I am sorry. I went up to the rest room, and the whistle blew, and I started down stairs, and was in a hurry to get back to my place, and I slipped on the slippery stuff that was on the stairs there', and so forth. You so testified, didn't you? A. Yes. Q. And referring to page 9 of your deposition, did you testify as follows: 'Q. Did you observe any slippery material on the steps or on the stairway? A. Yes, there was always a mess on the stairs at recess time. Q. There was always a mess every day, was there?

A. Yes, there was. Q. You had noticed that before on those previous days that you worked there, had you? A. Well, when I worked there before, not so much this time, but before it was always messy and slippery, and when I went upstairs, I noticed it was slippery. Q. In other words, just a few minutes before the accident when you were going upstairs you noticed that? A. Well, I would say about ten minutes before that it was.' Did you so testify, Mrs. Hurst? A. I probably did. Q. And on the next page, page 10, did you testify to this effect: 'Q. This slippery condition of the stairs that you have mentioned, just describe that as definitely as you can. Just what did you notice in reference to that? A. Water and peach peelings and that sort of thing, peach juice, and just a general mess that comes off of those aprons and shoes going up and down the stairs and places where they are. Q. And you definitely noticed that as you went up the stairs about ten minutes before? A. Yes.' Did you so testify? A. Yes, but I am afraid I misunderstood you. Q. You misunderstood? Why, these questions are very clear and simple, aren't they? A. We were talking—I thought you might have meant did I notice it before. I didn't know you meant that same day. Q. Well, 'ten minutes before', do you think that would be several days before? A. Well, hardly."

At the close of plaintiffs' case, the trial court sustained defendant's challenge to the sufficiency of the evidence and granted its motion for nonsuit. In doing so, the court considered Mrs. Hurst's admission in the pretrial deposition as binding upon her, or, to use the vernacular, that "she had sworn herself out of court." The court felt that, under the ruling of *Cummins v. Dufault*, 18 Wn. (2d) 274, 139 P. (2d) 308, she assumed the risk in that she used the stairs with knowledge of their condition, and thereby relieved the employer of its duty to warn.

Thereafter, the court granted a motion for new trial, feeling that it had erred in granting the nonsuit. This appeal follows.

Appellant contends that the trial court did not err when it sustained the challenge to the sufficiency of the evidence and granted the motion to dismiss, for the following reasons: (1) There was no substantial evidence showing any negligence on the part of appellant or legally imputable to it as

a proximate cause of the accident; (2) The accident was proximately caused by contributory negligence as a matter of law on the part of respondent; and (3) Respondent assumed the risk and is precluded from recovery as a matter of law.

In deciding this appeal, we must bear in mind the familiar rule that defendant's challenge to the legal sufficiency of the evidence admits the truth of plaintiff's evidence and all reasonable inferences to be drawn therefrom; and that we interpret the evidence in the light most favorable to plaintiff and most strongly against defendant. *Smith v. American Cystoscope Makers*, 44 Wn. (2d) 202, 266 P. (2d) 792; *Arthurs v. National Postal Transport Ass'n*, 49 Wn. (2d) 570, 304 P. (2d) 685.

In view of the above rule, we are satisfied, from the record, that there was substantial evidence from which the jury could find that appellant was negligent, and that its negligence was the proximate cause of respondent wife's injury. Also, there was a sufficient conflict in the evidence to require that the issues of contributory negligence and assumption of risk be submitted to the jury, unless respondent wife, by her own testimony, defeated her right of recovery.

However, it is questionable whether the doctrine of assumption of risk applies in this case. Here, at the time of the accident, the plaintiff was on her lunch period and was not under the control of her employer. See *D'Amico v. Conguista*, 24 Wn. (2d) 674, 167 P. (2d) 157; *Mutti v. Boeing Aircraft Co.*, 25 Wn. (2d) 871, 172 P. (2d) 249.

Appellant's principal contention is that respondent wife's admission in the pretrial deposition of having notice of the condition of the stairway, is binding upon her as a matter of law, and she is precluded from recovering damages. The rule is stated in an annotation in 50 A. L. R. at page 980:

"An examination of the decisions reveals that when a party testifies to positive and definite facts which, if true, would defeat his right to recover or conclusively show his liability, and such statements are not subsequently modified or explained by him so as to show that he was mistaken

although testifying in good faith, it has generally been held that he is conclusively bound by his own testimony, and cannot successfully complain if he is nonsuited or the court directs a verdict against him."

In 169 A. L. R. at page 801, the annotator states:

"Where a plaintiff, in laying out his main case, testifies deliberately to a specific, pivotal fact within his knowledge, which shows as matter of law that he cannot recover, the judge may end the trial and rule for the defendant, as though the statement had been made by the plaintiff's counsel in his opening."

Did respondent wife "swear herself out of court"? It should be noted that this matter arose under cross-examination, with reference to a pretrial deposition which was not introduced in evidence. Rule of Pleading, Practice and Procedure 26 (f), 34A Wn. (2d) 86, provides in part:

"(f) Effect of Taking or Using Depositions. A party shall not be deemed to make a person his own witness for any purpose by taking his deposition. The introduction in evidence of the deposition or any part thereof for any purpose other than that of contradicting or impeaching the deponent makes the deponent the witness of the party introducing the deposition, but this shall not apply to the use by an adverse party of a deposition as described in paragraph (2) of subdivision (d) of this rule [the deposition of a party]. At the trial or hearing any party may rebut any relevant evidence contained in a deposition whether introduced by him or by any other party."

It is clear, from the record, that appellant did not make Mrs. Hurst its witness; that it did not introduce the deposition in evidence, but only used it for impeachment purposes, and not to prove the substantive facts contained therein. In *State v. Fliehman*, 35 Wn. (2d) 243, 212 P. (2d) 794, we said:

"It is elementary that impeaching evidence should affect only the credibility of the witness. It is incompetent to prove the substantive facts encompassed in such evidence."

See, also, *Sova v. First Nat. Bank of Ferndale*, 18 Wn. (2d) 88, 138 P. (2d) 181, where we said:

"It is a general rule that a plaintiff is not absolutely bound

by a statement in the nature of an admission elicited by a searching cross-examination, which statement is to some extent inconsistent with the witness' testimony on direct examination, or inconsistent with other facts or circumstances. . . .

"Examination of the record convinces us that it was the province of the jury to consider and weigh all of respondent's testimony in connection with the other evidence contained in the record."

██ Respondent wife did not, by her own testimony, defeat her right of recovery. It was the province of the jury to consider and weigh her testimony on both direct and cross-examination and to determine therefrom, in connection with the other evidence, whether or not her conduct constituted contributory negligence.

The order granting new trial is affirmed.

HILL, C. J., FINLEY, and OTT, JJ., concur.

MALLERY, J., dissents.

---

October 23, 1957. Petition for rehearing denied.