[No. 42012.    En Banc.    June 29, 1972.]

JACQUELINE'S WASHINGTON, INC., *Petitioner,* v.
MERCANTILE STORES CO., INC., *et al., Respondents.*

*Nashem, Prediletto & Fortier* and *Mark R. Fortier,* for petitioner.

*Gavin, Robinson, Kendrick, Redman & Mays* and *William H. Mays,* for respondents.

NEILL, J.—Plaintiff appeals from a dismissal of its claim for smoke damage to its stock of women's high fashion apparel occasioned by a fire in defendants' adjoining store. The trial court, sitting without a jury, found in favor of plaintiff on the issue of liability but dismissed the action with prejudice, finding that plaintiff had failed to establish the amount of damages with sufficient certainty to permit an award.

Plaintiff's appeal to the Court of Appeals presented the single issue of whether the evidence before the trial court was sufficient to require an award of substantial damages. The Court of Appeals affirmed. *Jacqueline's Washington,*

*Inc. v. Mercantile Stores Co.*, 4 Wn. App. 785, 484 P.2d 445 (1971). We granted review. 79 Wn.2d 1008 (1971).

It is clear from the record that plaintiff suffered substantial damage. Defendants' liability for such loss has been established by unchallenged findings and conclusions of the trial court. Plaintiff seeks to recover only the difference between the net wholesale value of the damaged merchandise immediately before the fire and the net wholesale value of the merchandise immediately thereafter. This measure of damages is not in issue. *See generally* 3 L. Frumer & M. Friedman, Personal Injury, § 3.05(7) 251 (1965); *Mock v. Terry*, 251 Ore. 511, 446 P.2d 514 (1968).

■ Although the fact of substantial damage has been established, the amount is difficult of proof. The value of the merchandise after the damage is almost exclusively a matter of opinion. We have often observed that in such circumstances, where there is no uncertainty as to the existence of substantial damages or as to causation, recovery of substantial damages is not to be denied merely because the extent or amount thereof cannot be ascertained with mathematical precision, provided the evidence is sufficient to afford a reasonable basis for estimating loss. *E.g., Reefer Queen Co. v. Marine Constr. & Design Co.*, 73 Wn.2d 774, 440 P.2d 448 (1968); *Sigman v. Stevens-Norton, Inc.*, 70 Wn.2d 915, 425 P.2d 891 (1967); *Brear v. Klinker Sand & Gravel Co.*, 60 Wn.2d 443, 374 P.2d 370 (1962); *Wenzler & Ward Plumbing & Heating Co. v. Sellen*, 53 Wn.2d 96, 330 P.2d 1068 (1958); *Gilmartin v. Stevens Inv. Co.*, 43 Wn.2d 289, 261 P.2d 73, 266 P.2d 800 (1953).

■ The determination of whether evidence is "sufficient to afford reasonable basis for estimating loss" must depend upon the particular circumstances. Important considerations are, first, that courts should be exceedingly reluctant to immunize defendants and dismiss plaintiffs for such reason; and, second, that the purpose of the requirement is to spare the trier of fact the onus of an attempt to assess damages solely by speculation and conjecture and without the benefit of probative evidence on the issue.

We have said that the plaintiff must have produced the best evidence available under the circumstances. *B. & B. Farms, Inc. v. Matlock's Fruit Farms, Inc.*, 73 Wn.2d 146, 437 P.2d 178 (1968); *Brear v. Klinker Sand & Gravel Co., supra.* Plaintiff's evidence consisted of the opinion testimony of its store manager at the time of the fire. The manager had 25 years' experience in women's apparel merchandising and had been plaintiff's manager for several years. Defendants suggest that there was better evidence available to plaintiff in that plaintiff could have undertaken to introduce evidence based upon the price received for the damaged apparel at a subsequent "fire sale." We agree with the Court of Appeals and trial court that such basis gives no reliable indication of actual smoke loss. There is very little relationship between the price received at a retail sale several months later and the wholesale value of the goods immediately following the fire. In the absence of a wholesale sale of the damaged merchandise, much of which is seasonable, near the time of the loss, the best available evidence, pertaining directly to the wholesale value of the merchandise after the damage, was opinion evidence such as that introduced by plaintiff.

Plaintiff's manager expressed his expert opinion that the wholesale value of the inventory had been reduced 50 per cent by reason of the fire. Subsequently, plaintiff's bookkeeper testified that the wholesale value of the inventory before the fire was $22,668.30. During cross-examination of this witness, two exhibits contradictory of the cumulative effect of this testimony were introduced by defendants and accepted into evidence by the court. These consisted of an accountant's written statement of loss and plaintiff's president's sworn statement of amount of loss setting the amount of damage at $7,263.85 and $8,964.92, respectively. These exhibits are not in themselves contradictory as one contains items not included in the other.

The trial court accepted the testimony of plaintiff's witness as to the wholesale value of the inventory before the fire. However, it chose to disbelieve plaintiff's manager as

to the extent of damage suffered. The court concluded that there was not sufficient evidence from which it could determine the amount of damage compensable to plaintiff. In reaching this conclusion, the court refused to consider the defense exhibits stating lower amounts of damage, except for purposes of impeachment.

■ ■ It is true that, as a general rule, impeaching evidence affects only the credibility of the witness and is incompetent to prove the substantive facts encompassed therein. *E.g., Hurst v. Washington Canners Co-op,* 50 Wn.2d 729, 314 P.2d 651 (1957). *Hurst* involved a fact situation in which the impeaching matter was a prior inconsistent statement of the witness, which statement was not placed in evidence. We there stated at page 733:

> [A]ppellant [during cross-examination of plaintiff] did not make Mrs. Hurst [plaintiff] its witness; that it [appellant] did not introduce the deposition in evidence, but only used it for impeachment purposes, and not to prove the substantive facts contained therein.

We think the type of evidence submitted in the case at bench calls for an exception to the general rule.

The exhibits introduced by defendants were not in the nature of prior inconsistent statements of plaintiff's witnesses. Nor do these exhibits tend to indicate partiality, incapacity or other lack of testimonial qualities in the witnesses. As an impeachment tool, the sole value of these exhibits is that they contradict the substantive testimony of plaintiff's witnesses on a fact in issue, *viz.,* the extent of damage. In a sense these exhibits are merely items of rebuttal in impeachment form. Such items are within the category of impeachment by contradiction. *See generally* 3A J. H. Chadbourn, Wigmore on Evidence, ch. 35 (1970); 5 R. Meisenholder, Evidence Law and Practice, Wash. Prac. § 304 (1965).

Unlike impeachment by prior inconsistent statement (*see* Meisenholder, *supra,* §§ 291, 296), impeachment by mere contradiction is not within any exception to the hearsay rule. *Anderson v. Dobro,* 63 Wn.2d 923, 389 P.2d 885 (1964).

Plaintiff has raised no objection to defendants' exhibits; defendants, by introducing the exhibits, have waived any objection; so there is no hearsay issue before us. *See, e.g., Carraway v. Johnson,* 63 Wn.2d 212, 386 P.2d 420 (1963); *W. W. Conner Co. v. McCollister & Campbell, Inc.,* 9 Wn.2d 407, 115 P.2d 370 (1941). To be admissible, such extrinsic evidence must be independently competent and must be admissible for a purpose other than that of attacking the credibility of the witness. *E.g., State v. Oswalt,* 62 Wn.2d 118, 381 P.2d 617 (1963); *see* Meisenholder, *supra,* § 304 at 283 and cases there cited. The substantive facts contained in those exhibits (variant statements as to amount of damage sustained) have direct and independent relevance to a material fact in issue. For this reason the evidence was properly before the court in the form of impeachment by contradiction.

The very characteristics which rendered the defendants' exhibits admissible at trial, *i.e.,* their nature as independently competent, material and reliable, militate against applying the general rule of limited use (*Hurst v. Washington Canners Co-op, supra*) to those exhibits. Having established these characteristics as a prerequisite to letting the evidence in, it would be incongruous to require that the probative value of the evidence be ignored. We hold, therefore, that evidence properly admitted to impeach by mere contradiction constitutes an exception to the general rule and is competent to prove the substantive facts encompassed in such evidence.

In light of this determination, the record before us contains sufficient evidence, of the best sort available under the circumstances, to afford a reasonable basis for estimating the loss. *See W. W. Conner Co. v. McCollister & Campbell, Inc., supra;* Meisenholder, *supra,* § 386. At the very least, this evidence would support a judgment in the lowest amount computable from the evidence. Plaintiff is not to be denied a substantial recovery merely because the precise amount of damage is incapable of exact ascertainment. *E.g., Brear v. Klinker Sand & Gravel Co., supra.* A more strin-

gent requirement would be contrary to the basic principle which is operative in these cases, as quoted in *Wenzler & Ward Plumbing & Heating Co. v. Sellen,* 53 Wn.2d 96, 99, 330 P.2d 1068 (1958):

> "The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.
>
> . . .
>
> " 'The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery' for a proven invasion of the plaintiff's rights. . . ." [*Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 90 L. Ed. 652, 66 S. Ct. 574 (1946).]

Accordingly, the judgment of the trial court is reversed and the cause remanded for a new trial on the issue of damages.

HAMILTON, C.J., FINLEY, HALE, STAFFORD, and WRIGHT, JJ., concur.

ROSELLINI, J. (dissenting)—I cannot agree with the majority that the trial court and the Court of Appeals should be reversed. This appears to me to be a classic case of failure of proof. Having the damaged goods within its control and the opportunity to obtain an independent appraisal of the amount of loss, the plaintiff chose not to obtain such evidence but relied upon the testimony of its own employee, which the trial court quite justifiably found unconvincing.

The trial court found: there is no credible evidence of the amount of damage resulting to plaintiff's stock. It concluded

> [t]here is insufficient evidence from which the court can determine with reasonable certainty the amount of diminution of value to plaintiff's merchandise as a result of defendant's negligence and no evidence of any other damage to plaintiff.

The parties agreed that the following rule governs the measure of damages:

Ordinarily, the measure of damages is the retail market value of the property immediately before the damage occurs, and immediately thereafter. However, where the property is owned by a dealer and is part of his stock in trade, the measure of damages is the difference between the wholesale value, plus delivery charges, immediately before the damage occurred and the (wholesale) market value immediately after the property was damaged.

(Footnote omitted.) 3 L. Frumer & M. Friedman, Personal Injury: Actions-Defenses-Damages § 3.05, p. 251 (1965).

As this court acknowledged in the very liberal case of *Gilmartin v. Stevens Inv. Co.*, 43 Wn.2d 289, 261 P.2d 73, 266 P.2d 800 (1953), what is "reasonable certainty" depends largely on the extent to which the particular damage in issue is susceptible of accurate proof. We said in that case that the proper and only method of proving difference in market value is opinion testimony as to values, given by witnesses competent to express an opinion on the subject.

Needless to say, the opinion of a disinterested expert is more to be valued than that of an interested "expert." One of the latter, if its witness was indeed an expert at all on the subject of wholesale market value of smoke-damaged merchandise, was all that the plaintiff offered in this case. On this score, it was shown that the manager had many years of experience in merchandising, but there was no evidence that he was familiar with the market values of smoke-damaged clothing or had had any experience in evaluating such damage.

The majority recognizes that the trial court was entitled to discredit the testimony of this witness but finds that it was in error in not considering as substantive evidence, a statement by the plaintiff's accountant and a proof of loss based upon that statement.

The accountant was not present at the trial for cross-examination upon his method of computing the loss which is stated therein or the source of his figures, but I think we may safely assume that he obtained from the plaintiff the figures which he used. We have no way of knowing what measure of damages he used, so that even if we thought

that his statement is competent evidence of the fact of loss, it is not shown to be relevant on the question of the difference in market value of the merchandise before and after the smoke damage.

I have examined this statement. Not only is it hearsay, but without explanation by the person who prepared it, it is unintelligible. At best, it shows the basis upon which the proof of loss submitted by the plaintiff to some insurer was prepared. It was offered only for this purpose, I assume, and the proof of loss was offered only to show a prior inconsistent claim on the part of the plaintiff. That was all it was good for. Under no stretch of the law could that self-serving declaration be used as substantive evidence of the amount of loss sustained by the plaintiff. Yet the majority blandly states that not only was it acceptable evidence, but it was all the evidence the trial court needed to support an award in the full amount of the claim!

The next step in the logical progression from this holding must be that all that a plaintiff needs to do to prove his case is to introduce in evidence a copy of his complaint.

Even in an action on the policy of insurance, the general rule is that the insured can introduce a proof of loss merely for the purpose of showing a compliance with the policy, and not as evidence of the facts therein stated. 3 Richards on Insurance § 469 (5th ed. 1952); 46 C.J.S. *Insurance* §§ 1340-1341 (1946); 44 Am. Jur. 2d *Insurance* § 2015 (1969). The latter encyclopedia states that it has been said that proofs of loss are evidence of the facts therein stated, in favor of as well as against the insured. However, the only case cited in the footnote is *Insurance Co. v. Higgenbotham,* 95 U.S. 380, 24 L. Ed. 499 (1877). A reading of that case will show that the court affirmed the holding of *Insurance Co. v. Newton,* 89 U.S. (22 Wall.) 32, 22 L. Ed. 793 (1874), which was that preliminary proofs presented to an insurance company in compliance with the condition of its policy of insurance are admissible as prima facie evidence of the facts stated therein, *against the insured* and on behalf of the company.

I have found no authority holding that these obviously self-serving declarations can be introduced in evidence by the insured to prove the truth of the statements which he made therein. The majority's holding that a claim set forth in such a proof of loss will support a verdict is contrary not only to the general rule, but to the holdings of this court where the question has come before it. The majority opinion does not cite, and I have not been able to find, a recent case upon the subject. However, the two cases which my research has uncovered are in complete accord with the general rule that statements contained in a proof of loss are not substantive evidence.

*Cascade Fire & Marine Ins. Co. v. Journal Publishing Co.*, 1 Wash. 452, 25 P. 331 (1890), was an action upon a policy of fire insurance in which the plaintiff had neglected to offer competent evidence concerning the amount of its loss, just as the plaintiff did in this case. In that case, as in this, the proof of loss which the plaintiff had submitted to the company was admitted in evidence upon cross-examination of a plaintiff's witness. There it was admitted for the purpose of showing the date upon which it was submitted. Here the proof was offered to show that the plaintiff's president had made a prior statement of the amount of loss which was inconsistent with its witness' statement at the trial.

This court in that case said:

The seventh paragraph of the complaint alleged the loss to have exceeded $1,000, and it was for the plaintiff to sustain that allegation with competent proof. We doubt whether the proof of loss was intended to be proof of value, when it was introduced, and even if it had been it could have served no such purpose. The proof of value having been omitted there was no case for the jury.

1 Wash. at 456.

In *Hennessy v. Niagara Fire Ins. Co.*, 8 Wash. 91, 35 P. 585 (1894), it was held that in an action on a fire insurance policy, the proofs of loss were admissible to show that the plaintiff had complied with the terms of the policy and in connection with the defense that the plaintiff had sworn

falsely therein. There was no contention in that case that the proofs had been used to support the claim of the amount of loss.

Not only was the proof of loss a self-serving declaration, there is also no showing that the "loss" claimed therein was based upon the reduction in market value of the damaged merchandise. We have no way of knowing upon what evidence the accountant who prepared it reached the conclusion that a loss in the amount claimed had been sustained. We have no reason to suppose that it was based upon an appraisal of the fire damage by a competent disinterested appraiser. It is self-serving, it is hearsay, and its relevance to the issue before the court has not been shown, even assuming that it might be considered competent evidence if it were relevant.

In my opinion, the trial court quite properly declined to consider this evidence of a claim made by the plaintiff as competent evidence of the reduction in wholesale market value of the merchandise, occasioned by the fire.

Since the proof of loss was not competent evidence to support a judgment, the only evidence before the court relating to value was that of the plaintiff's manager, and the court did not find that evidence credible. This was not an unreasonable evaluation on the part of the court. The manager said that he made a random inspection of the higher-priced apparel. He stated that such apparel was more difficult to sell than other merchandise if it had suffered any damage at all and concluded that it had been reduced in value by 50 per cent. He was obviously thinking of retail salability when he made this statement. Then, apparently. without taking into account that all of the merchandise was not damaged equally (some of it being in bins), he applied that 50 per cent figure to all of it. He admitted that there was no visible damage to the clothing; the damage was that the garments smelled of smoke. He testified that none of the merchandise was cleaned before it was comminged with other undamaged clothing and of-

fered for sale at prices which were reduced comparably upon both the damaged and undamaged merchandise.

The majority is apparently of the opinion that the judgment of an employee based upon a cursory examination was the best evidence of reduction in value which the plaintiff could obtain. I do not agree. It seems to me that the plaintiff could have had the damage appraised by a disinterested appraiser before it commingled the clothing with clothing from other stores and made it impossible for the defendant to have it appraised.

The trial court also took into account the fact that, shortly after the fire, the plaintiff had advertised the merchandise for sale at a 10 per cent reduction in the retail price. As the court stated in its memorandum opinion, even this evidence was not related to the wholesale value and was not usable in determining the reduction in that value.

The court also had the right to consider the fact which was in evidence that the store opened as usual on the morning of the fire, and continued to do business as usual until the first sale was held a week later.

This court has not heretofore departed from the rule that a plaintiff must prove his damages with reasonable certainty, insofar as they are capable of such proof. Common knowledge tells us that there are competent appraisers who can apply their expertise and determine at least the approximate amount of damage from fire or smoke. In this case, the plaintiff itself chose to commingle the allegedly damaged merchandise with other merchandise and sell it, without having obtained an independent appraisal. In doing so, it ran the risk that a trier of the facts in a lawsuit against the plaintiff would not be willing to accept the estimate of its manager as convincing proof of the amount of loss.

The majority has given a new twist to the rule of the *Gilmartin* case, that if the plaintiff has produced the *best evidence available* and shown substantial damage, an award in some substantial amount must be made. The new rule appears to be that if the plaintiffis produce *any* evi-

dence bearing on the question of the amount of damages, whether or not the trial court finds that evidence credible, and whether or not better evidence could have been produced with reasonable diligence, the trial court must make an award of substantial damages. Furthermore, the rule is now that the trial court may, and perhaps *must*, make an award at least in the amount which the plaintiff is shown to have claimed from some third party, even though there be no evidence to substantiate that claim.

It does not strike me as a just rule which relaxes the burden of proof where the plaintiff has the evidence within his own control, and has the means and the opportunity to obtain disinterested and credible evidence as to the amount of his loss, and not only fails to do so but also makes it impossible for the defendant to obtain evidence upon this question.

In my opinion the trial court, which had the witnesses before it and heard the evidence, was entirely justified in finding that the plaintiff had failed to sustain its burden of proof. I would affirm its judgment and that of the Court of Appeals.

HUNTER, J., concurs with ROSELLINI, J.

Petition for rehearing denied September 28, 1972.