

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| EAN OZ SAGER, | ) |
| Appellant, | ) DIVISION ONE |
| | ) |
| | ) No. 76879-4-I |
| v. | ) |
| | ) UNPUBLISHED OPINION |
| SARA MENA, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| KISIRA N. HILL, and EDDIE B. HILL | ) |
| and JOANN HILL, Husband and Wife, | ) |
| | ) |
| Respondents. | ) FILED:  November 5, 2018 |
| | ) |

DWYER, J. — Following two separate automobile collisions, Ean Oz Sager brought suit against two of the other drivers, Sara Mena and Kisira Hill, and was awarded damages by a jury.  Sager asserts that the trial court erred by excluding photographic evidence of damage sustained to Hill's car.  Sager contends that the exclusion of the photographic evidence was an abuse of the trial court's discretion and allowed Hill to mislead the jury, resulting in an unfair assignment of damages as between the defendants.  Finding no abuse of the trial court's discretion, we affirm.

I

Sager was injured in two automobile collisions in the span of two days.  On September 27, 2012, Sager's vehicle was hit from behind by a vehicle driven by defendant Kisira Hill while Sager's vehicle was stopped at a pedestrian

crossing (Collision #1).[1] On September 29, Sager was involved in a more serious collision (Collision #2). In the second incident, his vehicle was struck from the side by a vehicle driven by defendant Sara Mena, pushing his vehicle into oncoming traffic where it was hit head-on by another vehicle coming from the opposite direction. In 2015, he sued Hill and Mena.

The defendants in each collision admitted their negligence and that Sager had been injured in the collisions. The jury's task was to decide the nature and extent of Sager's injuries, whether he failed to mitigate his damages, if damages could be apportioned between the two collisions, and, if so, to actually apportion responsibility for damages between the defendants.

In preparation for the argument of pretrial motions, Sager had numerous exhibits marked for identification, including plaintiff's proposed Exhibits 6–20, which were photographs of the damage sustained to the various vehicles involved in the collisions. Plaintiff's proposed Exhibits 12–15 were photographs of Hill's vehicle that showed damage to Hill's vehicle's hood, grille, and a headlight.

During argument on the motions in limine, both defendants objected to the introduction of the photographs. The trial court acknowledged the relevance of the photographs, but ruled against admitting any of them, reasoning that no party planned to offer biomechanical expert witness testimony that would explain to the jury how the damage to the vehicles showed the force of the impact of the

---

[1] Sager sued Kisira Hill as well as the owners of the vehicle Kisira was driving, Eddie B. Hill and Joann Hill. For convenience, unless the context indicates otherwise, "Hill" refers to Kisira Hill.

various collisions on Sager. The court explained that admitting the photographs into evidence could lead the jury to engage in speculation about the biomechanics of the collisions. Thus, the court ruled, the photographs' potential to mislead the jury and prejudice the defendants rendered them more prejudicial than probative under ER 403.

The parties then agreed not to elicit testimony about damage to the vehicles. However, the trial court did allow Sager to utilize diagrams of each collision, created by the investigating officers, to help demonstrate how each collision occurred.

At trial, Hill was allowed to testify out of order and in the middle of Sager's direct examination testimony. When asked to describe the collision in which she had been involved, Hill stated, "I was distracted and when I looked up, the traffic had stopped in front of me. I stepped on my brakes. Unable to stop in time, I made contact with Mr. Sager's vehicle." In response to a question about whether she spoke with Sager, Hill replied, "I did. After making contact with his car, we pulled to the side." This choice of words did not promote an objection from Sager, and Sager did not attempt to introduce the photographs at this time. Sager did not opt to cross-examine Hill as to her choice of words.

After counsel finished with Hill's direct and cross-examinations, but before Hill was excused from the stand, three jurors submitted written questions regarding the speed of her vehicle at the time of impact. In the resulting sidebar conference concerning whether to ask Hill the jurors' questions regarding her vehicle's speed, Sager's attorney argued that Hill's testimony had made an issue

of the force of impact on the parties' vehicles, and that her answers to the jurors' questions would open the door to the use of the vehicle damage photographs. All defendants objected to asking Hill the questions posed by the jurors. The trial court ruled that the likely prejudice from asking the questions outweighed their probative value and declined to pose the jurors' questions to Hill. Given that the questions were not asked, the trial court did not reach the issue of admitting the photographs at this time.

After Hill was excused, Sager's counsel continued with Sager's direct examination. In this examination, counsel directly addressed Hill's testimony and Sager provided a contrasting description of Collision #1. Sager testified that, as a result of the impact, his "head hit the back of the headrest" and he "hit his chin." When asked expressly how he would describe the impact in comparison to Hill's "made contact" testimony, Sager testified, "it was pretty significant contact, but not—not as bad as the second one."

At the conclusion of Sager's testimony, a juror proposed a question concerning the damage caused to Sager's vehicle in Collision #2. During the resulting sidebar conference, Sager's attorney acknowledged the trial court's initial bases for excluding the photographs—that, because there was no denial that both collisions caused injuries, damages from each collision could be determined by medical evidence. However, counsel argued that, given Hill's "made contact" testimony and defense counsels' cross-examination of Sager, both of which tended to minimize the impact of the first collision, Sager should be allowed to introduce the photographs of the damage to Hill's vehicle and answer

- 4 -

the juror's question about the damage sustained by his own vehicle in both collisions.

The trial court initially ruled that Sager could answer the juror's question about damage to Sager's vehicle and testify as to the condition of his vehicle after each collision, reasoning that the door had been opened, but did not allow the admission of any of the photographs. To this Mena's counsel objected, arguing that the question called for information relating to property damage that was not at issue and that the door to questions about the damage sustained by the various vehicles had not been opened—as Sager was essentially arguing that testimony on the first collision had opened the door to a question about vehicle damage in the second collision. Mena's attorney also argued that the information sought by the juror's question would confuse the jury as to whether it was to consider insurance or property damage.

The trial court then revisited its ruling, declining to allow Sager to answer the juror's question regarding damage to Sager's vehicle, while maintaining its decision not to allow the admission of the photographs. In addition to the reasons given in the pretrial hearing for excluding the photographs, the judge now agreed with Mena's attorney that the possibility of juror confusion over whether insurance or property damage was at issue also rendered the proffered evidence more prejudicial than probative.

In Hill's closing argument, Hill's counsel emphasized the comparative mildness of Collision #1 as opposed to Collision #2.

Ultimately, the jury found that Sager had proved total damages of $59,001.00. The jury then allocated $1,400.00 of damages to Hill from Collision #1 and $57,601.00 of damages to Mena from Collision #2. The jury also found that Sager failed to mitigate his damages in the amount of $6,250.00. Judgment was entered on the verdict. The defendants were not assigned joint and several liability.

Sager timely appealed.[2] After filing his notice of appeal, Sager settled his case against defendant Mena. She is not a party to this appeal.

II

A

This appeal concerns the decision of the trial court to exclude photographs of damage to Hill's vehicle. Sager asserts that the exclusion of the photographic evidence of the damage to Hill's vehicle resulted in the jury assigning to Hill too few of the proved damages. Specifically, Sager argues that, in the absence of photographic evidence of damage to Hill's vehicle, he was unable to demonstrate the force of the collision to the jury. Thus, he asserts, Hill was allowed to misrepresent the nature of Collision #1.[3]

Sager first assigns error to the trial court's pretrial decision to exclude the photographs of Hill's vehicle. Next, he contends that the trial court erred by

---

[2] Sager's argument on appeal is concentrated on the disparity between the amount of damages assigned to Hill, as opposed to those assigned to Mena. Prejudice was manifested, Sager argues, "[b]ecause of the disproportionate verdict." Reply Br. of Appellant at 3. Sager does not assign error to the trial court's instructions, nor does Sager invest any argument or citations to the record that would support the view that the "total damages" amount found by the jury was inadequate to fully compensate Sager. In the end, however, given that we find no error, this matters not.

[3] Sager does not assign error to the trial court's decision not to ask the jurors' questions regarding the speed of Hill's vehicle at the time of the collision.

- 6 -

continuing to exclude the photographs after Hill's testimony, notwithstanding the minimizing language Hill used to describe the impact and the questions posed by jurors that indicated a concern with the force of impact of the vehicles involved in Collision #1. Finally, he avers that the trial court erred by declining to admit these photographs at the conclusion of Sager's testimony for the purpose of impeachment by contradiction, especially in light of an additional juror question regarding vehicle damage. We hold that the trial court did not err in any of these instances.

To be admissible, evidence must be relevant. ER 402. Evidence is relevant when it has any tendency to make the existence of any consequential fact more probable or less probable than it would be without the evidence. ER 401. Facts that tend to establish a party's theory or disprove or rebut an opponent's theory or evidence are relevant. Fenimore v. Donald M. Drake Constr. Co., 87 Wn.2d 85, 89, 549 P.2d 483 (1976). However, even when relevant, evidence may nevertheless be excluded if its probative value is substantially outweighed by the likelihood that it will mislead the jury or promote a confusion of the issues. ER 403.

The trial court has wide discretion in determining whether evidence will mislead the jury. State v. Luvene, 127 Wn.2d 690, 707, 903 P.2d 960 (1995). Evidence that could lead the jury to engage in improper speculation is properly characterized as evidence that may mislead the jury for purposes of applying ER 403. The decision to admit or exclude evidence is within the sound discretion of

the trial court; we will not reverse such a decision absent a manifest abuse of that discretion. State v. Iverson, 126 Wn. App. 329, 336, 108 P.3d 799 (2005).

A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997) (citing In re Marriage of Kovacs, 121 Wn.2d 795, 801, 854 P.2d 629 (1993); In re Marriage of Wicklund, 84 Wn. App. 763, 770 n.1, 932 P.2d 652 (1996)). A court's decision is manifestly unreasonable if it adopts a view that no reasonable person would take, given the facts and applicable legal standard; it is based on untenable grounds or reasons if the court applies the wrong standard or relies on unsupported facts. Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 669, 230 P.3d 583 (2010).

Sager rightfully cites to cases indicating that photographs of damage to vehicles may be admitted to show the forces of impact on a person involved in a collision, even when liability is not at issue and biomechanical expert testimony is not available. See, e.g., Murray v. Mossman, 52 Wn.2d 885, 888, 329 P.2d 1089 (1958); Kramer v. Portland-Seattle Auto Freight, Inc., 43 Wn.2d 386, 389, 261 P.2d 692 (1953); Taylor v. Spokane, Portland & Seattle Ry. Co., 72 Wash. 378, 379-80, 130 P. 506 (1913). Indeed, the trial court herein never disputed the relevance of the photographs; rather, it exercised its discretion to determine that the photographs' probative value was outweighed by the danger of prejudice.

B

The trial court first subjected the photographs in question to ER 403's balancing test while resolving the pretrial motions. The court did not question the relevance of the photographs but, rather, determined that, under ER 403, their probative value was outweighed by the potential for prejudicial juror confusion or speculation. The court reasoned that, in the absence of biomechanical expert testimony, admission of the photographs could invite speculation from the jury as to how damage to the vehicles shown in the photographs were manifested in the injuries sustained to Sager's person.

Sager argues that courts, as a general rule, allow photographic evidence of vehicle damage because such photographs are relevant to determining personal injury to a plaintiff inside a vehicle, even in the absence of expert testimony. While many trial judges might have adopted Sager's view on the matter, that is not dispositive. A trial court's evidentiary ruling constitutes an abuse of discretion only when the ruling is one that no reasonable judge would make. Salas, 168 Wn.2d at 669. We cannot say that no reasonable judge would rule as the trial judge herein ruled. Nor can we say that all reasonable judges would have ruled in accordance with Sager's desired ruling. Thus, no abuse of discretion has been demonstrated. Salas, 168 Wn.2d at 669. There was no error.

C

Sager next claims that the trial court erred by not admitting the photographs of damage to Hill's vehicle mid-trial, after Hill's testimony and the

various juror questions. Sager argues that Hill's testimony, which minimized the force of impact with which her car collided with Sager's, opened the door to questions of vehicle speed and to the admission of photographic evidence of this force.

Once again, the trial court was required, pursuant to ER 403, to make a determination as to whether admitting the photographs would invite unfair prejudice. Moreover, the judge was plainly aware that Hill's testimony preceded the conclusion of Sager's direct examination, allowing Sager the opportunity to rebut Hill's statements through his own testimony. Indeed, Sager's attorney questioned him regarding Hill's characterization of the collision, which afforded Sager the opportunity to offer a contrasting description of the forces at work in the collision.

Sager argues that the photographs of Hill's vehicle would have conveyed the force of the impact in a way that Sager was not able to do in words. This speaks to the relevance of the photographs. But, again, the trial court never ruled that the photographs were irrelevant. Instead, at this point of the trial also, the trial judge relied on ER 403 in maintaining their exclusion. The judge explained the court's reasons on the record. This was an exercise of the court's discretion. To constitute an abuse of this discretion, the trial court's decision would have had to adopt a view that no reasonable person would take. Salas, 168 Wn.2d at 669. We cannot say that the trial court's decision, pursuant to the applicable facts and the ER 403 standard, meets this threshold. Thus, no abuse of discretion is shown. There was no error.

D

Finally, Sager assigns error to the trial court's continued exclusion of the photographs after they were offered to impeach Hill by contradiction. Impeachment by contradiction is not to be confused with impeachment of a witness by a prior inconsistent statement under ER 613. Rather, it is recognized by our courts as a means to introduce rebuttal evidence contradicting a witness's substantive testimony on a fact issue. Jacqueline's Wash., Inc. v. Mercantile Stores Co., 80 Wn.2d 784, 788-89, 498 P.2d 870 (1972). This evidence must be independently competent and admissible for a purpose other than attacking the witness's credibility. Jacqueline's Wash., 80 Wn.2d at 789. Admissibility of the evidence is, however, still contingent on a trial court's evaluation of its probative and prejudicial characteristics under ER 403. This evaluation, in turn, will not be overturned on appeal absent a manifest abuse of discretion.

Sager requested to introduce the photographs of Hill's vehicle after his testimony in a sidebar conference concerning whether to allow Sager to answer a juror's question concerning damage to Sager's vehicle after Collision #2. The court stated that, in addition to the concerns with the photographs that it identified at the pretrial conference, admitting them could invite jury speculation as to whether property damage or insurance claims were at issue. The concern that allowing both photographs of and descriptions of vehicle damage would lead to juror confusion as to whether the jury was to consider property damages was, as with the potential for speculation in the absence of biomechanical expert testimony, a tenable reason for continuing to exclude the proffered evidence.

- 11 -

The court's reasoning was not based on an incorrect legal standard. Littlefield, 133 Wn.2d at 47.

Sager had moved to admit the photographs of Hill's vehicle in response to a juror question about the condition of Sager's vehicle after the second collision. These photographs, in turn, showed only indirectly the forces that would have acted on the plaintiff in the first collision. The relationship between the specific juror question and the proffered photographs was attenuated at best. It was not unreasonable for the trial judge to express concern about "open[ing] that Pandora's box" of collateral issues, including insurance and property damage, by admitting evidence of vehicle damage. Again, we cannot say that no reasonable judge would arrive at this conclusion. Salas, 168 Wn.2d at 669. Thus, no abuse of discretion is shown. There was no error.

Affirmed.

We concur:

_Andrus, J._

_Dwyer, J._

_Appelwick, C.J._