[No. 35287. Department Two. May 11, 1961.]

JOSEPH F. MICHIELLI *et al.*, *Respondents*, v. U. S. MORTGAGE COMPANY, *Appellant.**

*Reported in 361 P. (2d) 758.

*T. David Gnagey,* for appellant.

*R. Max Etter* and *Ellsworth I. Connelly,* for respondents.

HUNTER, J.—This is an appeal from a judgment entered in favor of the plaintiffs by the court sitting without a jury in an action for damages for the breach of several contracts and for defamation of business reputation.

The defendant, the U. S. Mortgage Company, was engaged in the mortgage and loan business in Spokane, Washington. In the prosecution of this business, the defendant financed the construction of residential housing. The plaintiffs, Joseph F. Michielli and Patrick Michielli, Jr., doing business as the Michielli Bros., were engaged in the business of constructing and selling homes in and around Spokane.

On May 4, 1956, the plaintiffs entered into five separate written construction loan contracts with the defendant, and executed five notes and mortgages in favor of the defendant securing these contracts. The mortgages were duly recorded. In the construction loan contracts, the defendant promised

to loan sums amounting to more than $50,000 to the plaintiffs for the purpose of constructing five residences. Pursuant to the execution of these construction loan contracts, the plaintiffs commenced construction of the five residences and expended money for labor and materials.

In the normal operation of its business of financing the construction of residences, the defendant would obtain commitments from the Penn Mutual Life Insurance Company, or some other independent source, to purchase the forthcoming notes and mortgages before the construction loan contracts were entered into. However, in this case the defendant entered into the contracts before receiving any such commitments. Since no commitments were obtained by the summer of 1956, the defendant advised the plaintiffs that it would not advance any money toward the construction of the five houses as it had promised under the loan contracts.

Subsequent to the time the defendant refused to loan money under the contracts and during the late summer of 1956, the manager of the defendant contacted all or most of the plaintiffs' creditors to determine the amount due each of them and to fix a time and place for a creditors' meeting. This meeting took place and was conducted by the manager of the defendant. Outside of this meeting, the manager stated to one of these creditors that the plaintiffs were "very much in the hole," "they were going into bankruptcy," "they were a bunch of liars and cheats," and that as far as he was concerned, "they wouldn't be doing business in this town."

The plaintiffs commenced this action in September, 1957, to recover damages for breach of the contracts and for defamation of business reputation. In its answer, the defendant raised two affirmative defenses to the action for breach of the contracts: (1) its duty to loan money under the contracts was conditioned upon Penn Mutual Life Insurance Company, or some other independent source, committing itself to purchase the notes and mortgages and since this condition precedent had not occurred, it was under no duty to loan the money; and (2) the contracts were voidable because they were entered into upon the basis of material

misrepresentations made by the plaintiffs. As an affirmative defense to the action for defamation of business reputation, the defendant alleged the statements were both true and qualifiedly privileged, and the damage claimed to the plaintiffs' business was not attributable to these statements, but rather, to the decline in the sales of comparable residence houses in the area.

The trial court entered findings of fact and conclusions of law in favor of the plaintiffs and entered judgment awarding the plaintiffs $15,974.25 upon the claim for breach of the contracts and $4,000 upon the claim for defamation of business reputation. From this judgment, the defendant appeals.

The sole issue raised on this appeal relating to that part of the judgment upon the claim for breach of the contracts is whether the trial court erred in finding the appellant did not succeed in carrying the burden of proving its affirmative defenses to this claim.

The appellant assigns error to the trial court's finding that the appellant and the respondents did not agree that the construction loan contracts were contingent upon Penn Mutual Life Insurance Company, or some other independent source, committing itself to purchase the respondents' notes and mortgages.

This assignment raises a purely factual issue which was in dispute at the trial and was resolved by the trial court. There is substantial evidence in the record to support the trial court's finding; therefore, we will not overturn it. *Thorndike v. Hesperian Orchards*, 54 Wn. (2d) 570, 343 P. (2d) 183 (1959); *Kvame v. Patrick*, 57 Wn. (2d) 343, 357 P. (2d) 167 (1960).

The appellant assigns error to finding of fact VII entered by the trial court which is as follows:

"The said defendant further alleged and claimed fraud as a defense on the grounds that said plaintiffs misrepresented their financial condition, the number of speculative houses planned or under construction, the ownership of the lands upon which said five houses were to be built, and the value which plaintiffs placed upon their real estate holdings. That defendant further alleged and claimed that

the defendant relied upon the aforesaid alleged misrepresentation of material facts in entering into the five construction loan contracts. In this regard it is the finding of the Court that the Michielli Bros. did not misrepresent the number of speculative houses they had planned or under construction, and that the defendant was well informed by the plaintiff, PATRICK MICHIELLI, JR., as to the number of houses said plaintiffs were in the process of building. The Court further finds that the defendant's manager, MR. ROSEMOND, did not rely upon any particular written profit and loss statement or financial statement in entering into said construction loan agreements; the said ROSEMOND was well informed through prior dealings with the MICHIELLI BROS. as to the nature of their operations as house builders, knew the condition of the title to the land upon which the houses were to be built, and knew that they had an excellent credit rating. That the "Manager's Report" supplied by the plaintiffs' bookkeeper, MR. ALLISON, was not an audit of plaintiffs' financial condition, and was not intended to be, and upon its face it was informal in nature. Further, the Court finds that there was a failure of proof on the part of defendant that said financial reports pertaining to plaintiffs financial condition contained inaccuracies."

Under the record, the trial court was clearly justified in entering all the findings in finding of fact VII except the finding that there was a failure to prove the financial reports, pertaining to the respondents' financial condition, contained inaccuracies. However, the remainder of finding of fact VII supports the trial court's conclusion that the appellant did not enter into the contracts upon the basis of fraudulent misrepresentations of the respondents.

In *Haagen v. Landeis*, 56 Wn. (2d) 289, 352 P. (2d) 636 (1960), we set forth what must be proved by a party alleging fraud, stating that

"The nine essential elements of fraud, all of which must be established by clear, cogent, and convincing evidence, are: (1) A representation of an existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) his intent that it shall be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the repre-

sentation, (8) his right to rely upon it, and (9) his consequent damage. . . ."

In finding of fact VII, the trial court found there was no reliance by the appellant upon the financial reports or the other alleged misrepresentations of the respondent's. Whether the party alleging the fraud has satisfied the burden of proving reliance is a question peculiarly within the province of the trial court. In *Guier v. Shaw*, 48 Wn. (2d) 48, 290 P. (2d) 702 (1955), we said:

". . . reliance is largely a subjective matter. The trial court did not have to believe the plaintiff. . . . We are satisfied that the trial court here . . . was justified in finding or concluding that the plaintiff . . . failed to establish one of the essential elements of fraud by evidence that was clear, cogent, and convincing."

In the instant case, the trial court did not believe the testimony in behalf of the appellant and was justified in finding the appellant did not rely on the misrepresentations allegedly made. Therefore, the trial court correctly concluded that the appellant failed to sustain its burden of proving the alleged fraud on the part of the respondents.

The appellant assigns error to the trial court's findings as to some of the damages resulting from the breach of the contracts. The record supports the trial court's findings on all the items of damages except the amounts expended on dimension lumber cut for framing, concrete and labor for the five houses prior to the breach of the contracts. The trial court's findings exceeded the damages shown in the record as to dimension lumber cut for framing, $1,266.28, as to concrete, $76.29, and as to labor, $2,092.54. Therefore, the judgment must be reduced by the amount of $3,435.11.

In view of our disposition of the above assignments of error, it is unnecessary to consider the remaining questions raised relating to the claim for the breach of the construction loan contracts.

As to that part of the judgment upon the claim for defamation of business reputation, the appellant assigns two errors. In the first of these, the appellant contends the trial court erred in concluding the statements that the respond-

ents were "very much in the hole," "they were going into bankruptcy," "they were a bunch of liars and cheats," and that as far as he was concerned, "they wouldn't be doing business in this town" were not privileged.

The appellant argues these statements were made on an occasion of a qualified privilege. Assuming, *arguendo,* that an occasion of a qualified privilege did exist, the privilege was exceeded. The trial court found these statements were not made in good faith. No error is assigned to this finding; therefore, it must be accepted as an established fact in the case. *Hector v. Martin,* 51 Wn. (2d) 707, 321 P. (2d) 555 (1958). Where a statement is not made in good faith, a qualified privilege is exceeded. *Ecuyer v. N. Y. Life Ins. Co.,* 101 Wash. 247, 172 Pac. 359 (1918). *Cf. Chambers v. Leiser,* 43 Wash. 285, 86 Pac. 627 (1906); *Fahey v. Shafer,* 98 Wash. 517, 167 Pac. 1118 (1917). For a general discussion, see Comment, *An Outline of the Law of Libel in Washington,* 30 Wash. L. Rev. 36 (1955). Since the statements in the instant case were not made in good faith, the trial court correctly concluded they were not privileged.

In the remaining assignment of error the appellant contends the damages awarded upon the claim for defamation of the respondents' business reputation are excessive. We disagree.

These defamatory words in themselves prejudiced the respondents in their business. The success of the business depended upon their honesty, solvency and credit. These words tended to damage their reputation regarding their honesty, solvency and credit, and, therefore, were slanderous and actionable *per se. Ecuyer v. N. Y. Life Ins. Co., supra.* Where a defamation is actionable *per se,* and neither truth nor privilege is established as a defense, the defamed person is entitled to substantial damages without proving actual damages. *Cf. Arnold v. National Union of Marine Cooks & Stewards,* 44 Wn. (2d) 183, 265 P. (2d) 1051 (1954).

Whether the damages awarded are excessive depends upon the facts in each case. *Ecuyer v. N. Y. Life Ins. Co.,* 107 Wash. 411, 181 Pac. 871; 186 Pac. 327 (1919). In the instant case, the appellant principally bases its contention

that the damages are excessive upon the ground that the defamatory words were spoken only to one person. However, the record shows and the trial court found that the respondents' reputations were substantially damaged as a result of the defamatory statement. The respondents were young men, engaged in the speculative business of building and selling houses several at a time, which required good business reputations in order to obtain the large amount of credit necessary to their business. Under these circumstances we cannot say the damages of $2,000 awarded to each of the respondents for injury to their reputations are excessive.

The judgment for the respondents is affirmed, and the cause is remanded to the trial court for reduction of the judgment for damages in the amount of $3,435.11 upon that part of the judgment allowed on the claim for breach of the contracts. The respondents will be allowed their costs on this appeal.

FINLEY, C. J., DONWORTH, WEAVER, and OTT, JJ., concur.

---

July 5, 1961. Petition for rehearing denied.