[No. 38784. Department One. February 8, 1968.]

B. & B. FARMS, INC., *Appellant,* v. MATLOCK'S FRUIT FARMS, INC., *Respondent**

*Reported in 437 P.2d 178.

 

*Stouffer, Brown & Knight,* by *W. L. Brown, Jr.,* for appellant.

*Wallace B. Hager* (of *Hager & Young*), for respondent.

ROSELLINI, J.—The trial court in this action found that the plaintiffs, through an agent, purchased raspberry plants from the defendant which were labeled Willamette, but which proved to be Puyallup berries, and that the plaintiff was damaged as a result. The difference in variety was a material matter, although the two varieties do not differ greatly in appearance or quality. The difference lies in their susceptibility to mildew, which attacks the Puyallup variety but scarcely affects the Willamette.

The trial court also found that there was no fraud on the part of the defendant, but that it was negligent in labeling the plants. It found that the two varieties cannot be distinguished until they bear fruit,[1] and that the officers of the defendant honestly believed that they were selling Willamette raspberry plants. As a result of the mistaken labeling the plaintiff, which is in the business of growing raspberries, lost 1 year of production on a 17-acre tract, plus the expenses involved in removing and replacing the plants. Judgment was entered in favor of the plaintiff in the amount of $5,135.35.

On this appeal the plaintiff contends that the trial court should have awarded damages for lost profits, which were not included in the judgment. Instead the rental value of the land for a period of 1 year was allowed. Upon this contention of the plaintiff, the trial court, in its memorandum decision, said:

---

[1]However, the plaintiff became convinced that the plants sold to him were not Willamette plants when they began to show signs of mildew. The evidence was that this was a reasonable assumption.

Plaintiff contends for the rule of damages set forth in the *Nakanishi* case [*Nakanishi v. Foster*, 64 Wn.2d 647, 393 P.2d 635 (1964)] by which it would be entitled to recover the market value of crops which would have been raised had the plants been as ordered, less the expenses of raising, harvesting and marketing the crop, together with the salvage of the crop made by plaintiff through the sale of any part of the crop. The Court has concluded that this measure of damages does not apply in the instant case for the reason that we are here talking about a perrenial [*sic*] rather than an annual crop. In the cited case the crop would have been planted and harvested, all within a period of a few months. In the case at bar the mature crop for which plaintiff claims damages would not have been harvested until more than two years after the plainting. [*sic*] The Court is of the opinion that it cannot say without speculating or conjecturing, just what the yield of a crop two years after the planting would be. Any number of fortuitous circumstances might intervene, and as a matter of fact in this case a flood did occur in 1964, causing considerable damage to the crop.

Another factor which in the Court's opinion differentiates the damage rule in this case from the *Nakanishi* case is that plaintiff here had no crop to salvage, having plowed up the plants long before their maturity date. No evidence was produced by either side as to what the reasonable yield would have been from the plants had plaintiff left them in the ground. The Court is satisfied that the true measure of damages in this case is the loss directly and naturally resulting to the plaintiff from the mislabeling of the plants by defendant.

The Court finds that plaintiff has established by a fair preponderance of the evidence, damage and loss as follows:

| | |
|---|---|
| Cost of the plants | $767.60 |
| Fertilizer, one year | 340.00 |
| Spray, one year | 348.00 |
| Cultivating, one year | 425.00 |
| Hoeing, one year | 425.00 |
| Irrigation, one year | 180.00 |
| Removal of old plants | 675.75 |
| Cost of Equipment to remove | 510.00 |
| Labor | 320.00 |
| Cost of Replanting | 170.00 |
| Rental Value of Lane, one year | 850.00 |
| Land taxes, one year | 124.00 |

The Court therefore grants judgment to plaintiff against the defendant in the sum of $5,135.35, together with its costs and disbursements taxable herein.

The plaintiff produced witnesses to whom it posed a hypothetical question according to which they were asked to assume that Willamette raspberry plants were planted in the soil in question and were properly tended, that the weather was about normal for the period covered, that the land was inundated by flood but that the plants were not disturbed by it. They were asked to give their opinion of the probable yield for the second and third years. (The evidence showed that raspberry plants do not produce berries the first year, that they produce a "baby" crop the second year, which is approximately one-half as large as a mature crop, and that they produce their first mature crop the third year.) These witnesses all said the production should be between 1½ and 2 tons per acre the second year and should be at least 4 tons the third year. Witnesses also testified to the prevailing prices in these years.

It is the plaintiff's contention that these opinions, which were not contradicted by any experts of the defendant, established beyond cavil its right to recover lost profits for a baby crop the second year and a mature crop the third year.

While it has no bearing on our disposition of this appeal, we think for clarity's sake that we should remark that one of the plaintiff's witnesses testified to the obvious fact that the loss would not amount to a mature crop *plus* a baby crop but would equal only one mature crop. This is so, of course, because the plaintiff lost only 1 year of production. It dug up the plants in the fall of the year in which they were planted and planted new plants the following spring. Thus, in the year in which it would have had a mature crop, it had a baby crop. This baby crop offset the baby crop lost in the second year, leaving a total loss of only one mature crop. Thus the theory of the plaintiff advanced in its brief, that it lost profits on one baby crop as well as one mature crop, is incorrect.

The question remains whether the trial court should have granted judgment for the amount of profits which the plaintiff's experts testified would have been realized on one full crop. While there was no witness who disputed the testimony of the plaintiff's witnesses concerning the probable yield, if the facts were as stated in the hypothetical, there was a strong contention by the defendant, exemplified in its cross-examination of witnesses who testified about the flood, that the flood would probably have disturbed the plants (which would have been 1 year old, approximately, at the time it occurred), and would in fact have washed out 7 acres. The evidence was that 7 acres of land planted in the spring of 1964 were washed out completely. Officers of the plaintiff stated that, in their opinion, if the plants which were in the ground had been a year older, this would not have occurred. The defendant, however, brought out the weaknesses of this testimony on cross-examination. No disinterested expert testified on this matter. It was within the province of the trial court to accept or reject this interested testimony, and the court was not convinced, on the showing made by the plaintiff, that the plants would not have been damaged by the flood.

■ Where lost profits are recoverable, the amount of such loss must be established with reasonable certainty. *Larsen v. Walton Plywood Co.*, 65 Wn.2d 1, 390 P.2d 677, 396 P.2d 879 (1964). 25 C.J.S. *Damages* § 41 (1966).

The trial court was not convinced that the crop would necessarily have matured had it been of the Willamette variety and had it been left in the ground. The trial court was not obliged to accept the opinions of the plaintiff's officers that the flood would not have uprooted and destroyed the plants. Seven acres of plants which replaced the Puyallup plants were in fact washed out completely, and there was no evidence as to what percentage of the plants on the remaining 10 acres survived the flood, or that plants of the Willamette variety which had been planted for 1 year survived the flood in a similar area.

It is true that, as the plaintiff points out, the trial court found as fact that the plaintiff did lose substantial profits.

And it is also true that, in the case of *Gilmartin v. Stevens Inv. Co.*, 43 Wn.2d 289, 261 P.2d 73 (1953), we said that the "standard of reasonable certainty" is concerned more with the fact of damage than with the extent or amount of damage. That, of course, was not a case involving consequential damages, and this court pointed out that the standard of reasonable certainty has its most appropriate application in such cases. But conceding that the damages do not have to be proved with exact certainty, nevertheless the rule is that the plaintiff must produce the best evidence available and it must be sufficient to afford a reasonable basis for estimating his loss before he will be in a position to demand that the court fix the amount of his damages. *Dunseath v. Hallauer*, 41 Wn.2d 895, 253 P.2d 408 (1953). If the plaintiff produced the best evidence available, that fact is not pointed out in the brief nor in the record.

The trial court also grounded its refusal to award damages for lost profits on the plaintiff's failure to offer any evidence of what the profits would have been had the Puyallup plants been left in the ground and allowed to mature. The *Nakanishi* case, relied upon by the plaintiff as authority for his right to recover lost profits, did not concern a perennial crop. In that case, the seed sold by the defendant were left in the ground and the plants were allowed to mature and the crop had a salvage value. If the measure of damages applied in that case were applied here, it would be necessary to show the total market value of all the crops to be produced from one planting of Willamette plants,[2] as well as the value of all the crops which would have been produced had the Puyallup plants been left in the ground. There was no attempt to present such evidence and there was no evidence that the Puyallup plants were worthless.

The plaintiff's theory is that, inasmuch as it was justified in removing the Puyallup plants from the ground before they bore fruit, in computing the amount of damage, profits which might have been realized had they been al-

[2]There was evidence that the productive life of raspberry plants is from 6 to 10 years.

lowed to mature should not be deducted from the profits which would probably have been realized if the plants had been of the Willamette variety. It cites no authority in support of this theory, and we will not presume that such authority exists. *In re Cassel*, 63 Wn.2d 751, 388 P.2d 952 (1964).

■ Since the plants were destroyed by the plaintiff during their first year of life (concededly justifiably), the situation here is analogous to a case where perennial plants are destroyed by the defendant. If, as here, there is no mature or maturing crop at the time of the destruction and only the plants are destroyed, the measure of damages is the difference between the value of the land with the perennial plants (in a case of this kind, the value of the land had the plants growing on it been those contracted for, that is, the Willamette variety) growing on it and the value immediately after the destruction, or the cost of restoration plus the rental value. 21 Am. Jur. 2d *Crops* § 80 (1965). *See* 175 A.L.R. 203-04, 214 (1948). Since the plaintiff did not offer evidence as to the reduced market value of the land, the trial court properly applied the latter measure of damages.

We need not decide whether the trial court was correct in its statement that lost profits are inevitably speculative where perennial crops are involved. It is enough to say that it was justified in finding that they were too speculative in this case.

The judgment is affirmed.

FINLEY, C. J., HILL and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.

---

June 17, 1968. Petition for rehearing denied.