[No. 42538.    En Banc.    September 27, 1973.]

PEOPLES NATIONAL BANK OF WASHINGTON, *Respondent*, v. ROBERT W. PETERSON *et al.*, *Petitioners*.

*Fred Shelton*, for petitioners.

*John Moberg*, for respondent.

*C. James Judson* (of *Davis, Wright, Todd, Riese & Jones*), amicus curiae.

HAMILTON, J.—On February 28, 1968, and June 3, 1968,

defendants Robert W. and Josephine A. Peterson (hereinafter referred to as the Petersons) negotiated two farm loans from the Royal City Branch of Peoples National Bank of Washington in the principal amounts of $58,200 and $16,500 respectively. The loans were evidenced by two promissory notes, secured by security agreements covering specified crops and farm machinery, and induced by financial statements asserting ownership in several farm units and a net worth of approximately $250,000.

In late 1968, the notes fell in arrears and were extended for 1 year upon additional security consisting of the assignment of a farm lease and option upon another farm unit. Again, in late 1969, the notes became delinquent, and negotiations commenced concerning an additional extension. Negotiations failed, and on or about April 1, 1970, the bank, through its branch manager, advised the Petersons that it would have to take possession of the farm machinery covered by the security agreements. Mr. Peterson acknowledged the bank's right in this respect. Thereafter the bank, acting pursuant to the terms of the security agreements and the "self-help" provisions of the Uniform Commercial Code (RCW 62A.9-503),[1] peaceably took possession of the available farm equipment,[2] except one truck which the Petersons refused to surrender.

Following seizure of the equipment, the bank, on April 23, 1970, mailed to the Petersons a notice of repossession

---

[1]"Secured party's right to take possession after default. Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under RCW 62A.9-504." RCW 62A.9-503.

[2]Some of the equipment covered by the security agreements had been previously repossessed by the dealer from whom it had been purchased, and other pieces of equipment had worn out.

and a notice of private sale of the equipment to be held on and after May 5, 1970. Pursuant to this notice, a pickup truck was sold and the proceeds credited on the notes. On May 12, 1970, the bank mailed a second notice, cancelling the notice of private sale and advising the Petersons the equipment would be sold by public sale on June 9, 1970.

In the meantime, on April 3, 1970, the Petersons transferred title to three of the farm units, listed in the financial statements initially given to the bank, to their children. The considerations recited in the quitclaim deeds to the children were love and affection. Similar transfers of other farm units listed in the financial statements had previously been made. The bank, upon receiving notice of the quitclaim deeds of April 3, 1970, then commenced this action on April 15, 1970, by which the bank sought to recover upon the promissory notes, foreclose upon the security, obtain a deficiency judgment, and impress a lien upon the farm units which the Petersons had deeded away. Contemporaneously, a bond for attachment was filed and, upon the basis of an affidavit alleging that the Petersons were attempting to place their property beyond the reach of the bank as a creditor, a writ of attachment was issued. This writ of attachment was executed by the sheriff on April 28, 1970, against designated farm units. The sheriff's return on this writ was filed on May 11, 1970.

Upon receipt of the bank's May 12, 1970, notice of public sale of the equipment in its possession, counsel for the Petersons on May 15, 1970, addressed a letter to counsel for the bank in which he questioned the propriety of proceeding with the public sale in view of the pendency of the foreclosure action. Acting upon the gist of this letter, counsel advised the bank to abandon the public sale concept, and on June 9, 1970, procured the issuance of a second writ of attachment running to the farm equipment. This writ was executed by the sheriff on June 16, 1970, by levy upon the farm equipment in the possession of the bank and upon the truck previously retained by the Petersons. A keeper's receipt was issued to and signed by the local manager of

the bank, by the terms of which the bank retained possession of the equipment attached by the writ. Through inadvertence the sheriff's office failed to file a return on the writ as required by RCW 7.12.300.[3]

Issue was joined in this action by the filing of the named defendants' answers and counterclaims[4] and the bank's replies thereto. On September 10, 1970, counsel for the bank noted the cause for trial setting. Counsel for the defendants then filed a demand for jury trial, which projected the trial date over until April 19, 1971. Defendants thereafter by motion requested the trial court to strike the allegations of the bank's complaint relating to the transfer of title to the farm units, allegedly to place the Petersons' property beyond the reach of creditors, and to quash the outstanding writs of attachment. These motions were essentially predicated upon the contention that the bank was pursuing concurrent remedies in the foreclosure proceeding contrary to RCW 61.12.120.[5] The trial court granted these motions. Although the order quashing writs of attachment was broad in scope, the parties apparently deemed the order applicable only to the attachment levied upon the farm units.

Shortly before commencement of the trial on April 19, 1971, the trial court struck the demand for jury trial upon the grounds that the proceeding was one in equity. The defendants then moved to dismiss the bank's complaint and/or to amend the answer and counterclaim of the Peter-

---

[3]"Return of sheriff. The sheriff must return the writ of attachment with the summons, if issued at the same time, otherwise, within twenty days after its receipt, with a certificate of his proceedings indorsed thereon or attached thereto, . . ." RCW 7.12.300.

[4]The principal counterclaim alleged conversion of the farm equipment and wrongful attachment of the farm units to the damage of the respective defendants.

[5]"Concurrent actions prohibited. The plaintiff shall not proceed to foreclose his mortgage while he is prosecuting any other action for the same debt or matter which is secured by the mortgage, or while he is seeking to obtain execution of any judgment in such other action; nor shall he prosecute any other action for the same matter while he is foreclosing his mortgage or prosecuting a judgment of foreclosure." RCW 61.12.120.

sons to assert alternatively by way of affirmative defense and/or counterclaim that the bank had failed, after initiating its "self-help" remedy under RCW 62A.9-503, to timely sell the equipment in its possession in a reasonably commercial manner as required by RCW 62A.9-504(3),[6] thereby electing to retain the farm equipment in full satisfaction of the outstanding indebtedness. The motion to dismiss was denied and the motion to amend granted. In this posture the cause proceeded to trial, during the course of which the various quitclaim deeds executed by the Petersons conveying their farm units to other members of the family were admitted into evidence as was the belated return of the sheriff on the writ of attachment directed to the farm machinery.

At the conclusion of the trial the defendants moved to dismiss from the action all defendants except the Petersons, to void and quash the second writ of attachment for failure of the sheriff to make a timely return, and to dismiss the bank's claim for a deficiency judgment because of its failure to timely and in a reasonably commercial manner pursue its "self-help" remedy to private or public sale. The bank then moved to dismiss the Petersons' counterclaim.

The trial court denied the defense motion relating to the writ of attachment and granted the remaining motions to dismiss. The theory upon which the trial court dismissed the bank's claim for a deficiency judgment is found in the following finding of fact:

## IX

That at the time of the trial of this action, which commenced on the 19th day of April, 1971, the Plaintiff has had in its possession the farm machinery it took pursuant to the "Self Help" provision of its security agreements at all times since it took possession of the same, and have not proceeded to dispose of the same in any commercially

[6] "(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. . . ." RCW 62A.9-504(3).

reasonable manner as required by statute and has failed in its obligation of good faith and by its actions, the Plaintiff has elected to retain the property it acquired under the "Self Help" provision of the security agreements in full satisfaction of the indebtedness owed by the Defendants, ROBERT W. PETERSON and JOSEPHINE A. PETERSON, to the Plaintiff, *and the Plaintiff has waived any right to a deficiency against the Defendants*, ROBERT W. PETERSON *and* JOSEPHINE A. PETERSON.

(Italics ours.)

The bank appealed. The Petersons did not cross-appeal.

The Court of Appeals reversed the judgment of the trial court and remanded the cause for entry of judgment upon any balance remaining due on the promissory notes after sale of the farm equipment. In so doing the Court of Appeals held, in essence, that the bank's nonjudicial and judicial remedies, as a secured party under the provisions of the security agreements and of the Uniform Commercial Code (RCW 62A.9-501(1),[7] 62A.9-503, and 62A.9-504(3)), were cumulative and not mutually exclusive; hence, the bank was not required to pursue, or precluded from pursuing, its "self-help" or nonjudicial remedies after commencing this action. *Peoples Nat'l Bank v. Peterson*, 7 Wn. App. 196, 498 P.2d 884 (1972).

The Petersons subsequently petitioned for rehearing before the Court of Appeals and, upon denial thereof, for review by this court. In the respective petitions, the Petersons alleged that, following the trial court's dismissal of the bank's claim for deficiency judgment and pending appeal before the Court of Appeals, the bank sold the farm equip-

---

[7] "(1) When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this Part and except as limited by subsection (3) those provided in the security agreement. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. If the collateral is documents the secured party may proceed either as to the documents or as to the goods covered thereby. A secured party in possession has the rights, remedies and duties provided in RCW 62A.9-207. The rights and remedies referred to in this subsection are cumulative." RCW 62A.9-501(1).

ment and credited the receipts therefrom against the promissory notes.

In their petition for review addressed to this court, the Petersons challenged: (a) the conclusion of the Court of Appeals concerning the cumulativeness of the nonjudicial and judicial remedies under the Uniform Commercial Code and the provisions of the security agreements; (b) the validity of the writ of attachment running to the farm equipment in view of the sheriff's failure to timely file a return thereupon; (c) the viability of the bank's appeal to the Court of Appeals in view of the post-judgment sale of the farm equipment; (d) the constitutionality of the "self-help" provisions of RCW 62A.9-503 and 62A.9-504; and (e) the constitutionality of the bank's prejudgment attachment of the farm equipment under RCW 7.12.020.[8]

Believing that the constitutional issues relating to the provisions of RCW 62A.9-503, 62A.9-504, and RCW 7.12.020 were of sufficient importance and in a procedurally proper posture to warrant review by this court, we granted the Petersons' petition.

Since granting the petition, we have been afforded the benefits of an amicus curiae brief and of oral argument. We have concluded, from these and from a reconsideration of the record as a whole, that the constitutional issues adverted to are not fairly and sufficiently before us in this proceeding to justify consideration.

We reach this conclusion upon the premise that the constitutional contentions were raised for the first time after

---

[8]"The writ of attachment shall be issued by the clerk of the court in which the action is pending; but before any such writ of attachment shall issue, the plaintiff, or someone in his behalf, shall make and file with such clerk an affidavit showing that the defendant is indebted to the plaintiff (specifying the amount of such indebtedness over and above all just credits and offsets), and that the attachment is not sought and the action is not prosecuted to hinder, delay, or defraud any creditor of the defendant, and either:

". . .

"(6) That the defendant has assigned, secreted, or disposed of, or is about to assign, secrete, or dispose of, any of his property, with intent to delay or defraud his creditors; . . ." RCW 7.12.020.

the decision of the Court of Appeals. They were not previously asserted either in the trial court or in the Court of Appeals. On the contrary, in both the trial court and in the Court of Appeals, the Petersons resolutely stood upon their assertions that (1) the bank's failure to timely sell the farm machinery in its possession in a commercially reasonable manner amounted to an election to retain the equipment in full satisfaction of the outstanding indebtedness, and (2) in any event, the writ of attachment pertaining to the equipment was void by virtue of the belated sheriff's return. Implicit in both contentions is the tacit acknowledgment that, either under the "self-help" provision of the Uniform Commercial Code or under an otherwise valid attachment, the bank was rightfully in possession of the equipment. Only after receiving an adverse ruling at the Court of Appeals level did the Petersons reverse their field and advocate the constitutional impropriety of either the "self-help" remedy or the pertinent attachment statute.

■ The general rule prevailing in this state is to the effect that issues not raised in the trial court cannot be raised for the first time on appeal. In *State ex rel. Cosmopolis Consol. School Dist. 99 v. Bruno*, 61 Wn.2d 461, 472, 378 P.2d 691 (1963), this rule is set forth thusly:

> Finally, the appellant contends that RCW 28.56.040, which enumerates the powers of the state board, is an unlawful delegation of legislative authority, and, therefore, is unconstitutional. This issue was not presented to, or considered by, the trial court, which precludes us from considering it upon this appeal. *Long v. Odell*, 60 Wn. (2d) 151, 372 P. (2d) 548 (1962); *Gnecchi v. State*, 58 Wn. (2d) 467, 364 P. (2d) 225 (1961); *Johnson v. Seattle*, 50 Wn. (2d) 543, 313 P. (2d) 676 (1957); *State ex rel. York v. Board of Cy. Com'rs of Walla Walla Cy.*, 28 Wn. (2d) 891, 184 P. (2d) 577, 172 A. L. R. 1001 (1947).

If there be a distinction between issues and theories advanced in support of a contention, we have applied the same general rule. In *State v. Reano*, 67 Wn.2d 768, 771, 409 P.2d 853 (1966), we stated the rule and the reason for it:

> This court will not review a case on a theory different

from that on which it was presented at the trial level. Questions not raised in that court will not be considered on appeal. *Ledgering v. State,* 63 Wn.2d 94, 385 P.2d 522 (1963); *Wetherbee v. Gary,* 62 Wn.2d 123, 381 P.2d 237 (1963); *National Indem. Co. v. Smith-Gandy, Inc.,* 50 Wn.2d 124, 309 P.2d 742 (1957); *Capper v. Callahan,* 39 Wn.2d 882, 239 P.2d 541 (1952); *In re Farmers & Merchants State Bank of Nooksack,* 175 Wash. 78, 26 P.2d 631 (1933). The reason for the rule is that, if a party desires to rely upon some theory other than that upon which the case was tried, he must present it to the trial court so that a ruling thereon may be made and, if such ruling be adverse, he may have an opportunity to elect to stand on his theory or apply to the court to amend his theory and present some other one.

In reviewing a decision of the Court of Appeals, we are generally limited to questions presented before and determined by that court and to claims of error directed to that court's resolution of such issues. *Wood v. Postelthwaite,* 82 Wn.2d 387, 510 P.2d 1109 (1973). We see no reason, therefore, why the rules of review above set forth should not apply to issues and theories not appropriately raised before the Court of Appeals, particularly so, when such issues and theories were not presented in either the trial court or the Court of Appeals.

Exceptions to the foregoing rules respecting issues initially raised on appeal are generally stated in *Maynard Inv. Co. v. McCann,* 77 Wn.2d 616, 465 P.2d 657 (1970). They include matters going to jurisdiction, right to maintain the action, illegality, invasion of fundamental constitutional rights, and lack of claim for relief. And, in *Siegler v. Kuhlman,* 81 Wn.2d 448, 502 P.2d 1181 (1972), we, by implication at least, erected a further exception in relying upon the fundamental justice of the case as permitting on review consideration of a theory not theretofore advanced.

In the context, framework, and circumstances of the instant case, however, we find no basis for application of any of the noted exceptions. Accordingly, we do not review the constitutional issues and theories raised by the Petersons here.

We turn, then, to the remaining contentions asserted in the Petersons' petition for review. The first is that the Court of Appeals erred in holding that the bank's nonjudicial and judicial remedies, under the provisions of the security agreements and the pertinent provisions of the Uniform Commercial Code, were cumulative and not mutually exclusive. Inherent in this contention is the claim that the Court of Appeals erred in reversing the trial court's determination that the bank elected to retain the farm machinery, initially coming into its possession via the "self-help" remedy, in full satisfaction of the outstanding indebtedness by failing to promptly sell it in a commercially reasonable manner pursuant to RCW 62A.9-504(3). We find no error in the Court of Appeals' determination with respect to the first aspect of this contention; and, under the circumstances of this case, including the letter of May 15, 1970, from the Petersons' counsel to counsel for the bank, and the failure of the Petersons to avail themselves of relief under RCW 62A.9-507(1),[9] we find no merit to the second prong of this contention. We, therefore, affirm the Court of Appeals' decision reversing the trial court and remanding the cause for determination and entry of any outstanding deficiency judgment.

Next, the Petersons assert that the writ of attachment directed to the farm machinery was voided by the sheriff's failure to timely file his return. The Court of Appeals did not directly pass upon this issue. In the light of the Court of Appeals' holding, however, concerning the nonjudicial and judicial remedies being cumulative and not mutually exclusive, and in view of the Petersons' final contention relative to the bank's post-judgment action, it would appear that this contention has become somewhat academic if not in fact moot. Nevertheless, we pause to note that there is a division of authority upon the effect of

[9]"(1) If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. . . ." RCW 62A.9-507(1).

a sheriff's failure to timely file a return on the execution of a writ of attachment. One line of authority, enunciated in *Dickinson v. First Nat'l Bank,* 64 N.D. 273, 252 N.W. 54, 93 A.L.R. 739 (1933), holds the untimely filing of a sheriff's return fatal to the writ. An opposite line of authority, finding expression in *State v. Hamill,* 111 Mont. 585, 112 P.2d 195 (1941), wherein an identical statute to RCW 7.12.300 was involved, concludes that, absent intervention of the rights of third parties, the failure to timely file a sheriff's return does not affect the lien of the attachment. In view of the admonitions of RCW 7.12.310,[10] providing for a liberal interpretation of the attachment statute, and the actual presentation of the return at trial, we would be inclined toward the second line of authority. The trial court, therefore, did not err in denying the Petersons' motion, apparently made for the first time at the conclusion of the trial, to quash the second writ of attachment.

■■ Finally, by way of allegations in their petition for review, the Petersons allege that the bank in exercising its "self-help" remedy, sold the equipment following the judgment in the trial court and pending appeal. This action, they contend, nullified the bank's appeal and relegated it to the holding of the trial court that no deficiency judgment was permissible.

We find this contention to be without merit for several reasons:

(1) The allegations regarding the bank's action in this respect are dehors the record and cannot properly be considered on appeal. *State v. Wilson,* 75 Wn.2d 329, 450 P.2d 971 (1969).

---

[10]"This chapter shall be liberally construed, and the plaintiff, at any time when objection is made thereto, shall be permitted to amend any defect in the complaint, affidavit, bond, writ or other proceeding, and no attachment shall be quashed or dismissed, or the property attached released, if the defect in any of the proceedings has been or can be amended so as to show that a legal cause for the attachment existed at the time it was issued, and the court shall give the plaintiff a reasonable time to perfect such defective proceedings. The causes for attachment shall not be stated in the alternative." RCW 7.12.310.

(2) No pertinent authority sustaining the Petersons' position in this regard has been cited.

(3) The theory advocated by the Petersons and adopted by the trial court, to the effect that the bank in not previously selling the property had elected to retain it in satisfaction of the outstanding indebtedness, invited the error of this alleged action, if it be error. In fact, in the trial court's oral decision the bank was advised that the equipment then belonged to the bank.

(4) The principal issue in both the trial court and the Court of Appeals revolved about the susceptibility of the Petersons to a deficiency judgment on the outstanding indebtedness rather than the incidental disposition of the farm equipment.

(5) The Petersons did not cross-appeal the dismissal of their alternative counterclaim for damages arising from any alleged wrongful conversion of their equipment.

(6) In view of the disposition of this appeal and review, we can discern no prejudice flowing to the Petersons from a sale which tended to forestall further depreciation in the value of the machinery.

In conclusion, we affirm the action of the Court of Appeals in reversing the judgment of the trial court and remanding the cause for entry of a deficiency judgment.

The bank shall be entitled to its costs on appeal and review.

HALE, C.J., FINLEY, ROSELLINI, HUNTER, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.