[No. 43789.    En Banc.    November 26, 1975.]

PUGET SOUND PLYWOOD, INC., *Appellant*, v. FRANK MESTER,
ET AL, *Respondents*.

*Johnson & Crane*, by *Zane B. Johnson*, for appellant.

*Van Buskirk & Haas*, by *Henry Haas*, for respondents.

HOROWITZ, J.—This case concerns an action brought by plaintiff (appellant), Puget Sound Plywood, Inc., against defendant (respondent), Frank Mester, for amounts due for lumber and building materials, and a counterclaim by defendant for wrongful service of notices of claim of lien under RCW 60.04.210 and for wrongful filing of materialmen's liens. The trial court entered judgment for plaintiff, and judgment for defendant on his counterclaim. Plaintiff appeals only the judgment on the counterclaim.

Defendant was a relatively small-scale general contractor, engaged in the construction of residential homes in Pierce County, Washington. His business was heavily dependent on credit, necessary to obtain his construction financing. This financing came from two sources. For "speculative" or "presold" homes, the interim construction financing came from Coast Mortgage Company. For "custom" homes, all financing came directly from the home buyer. In 1972, respondent obtained nine construction loans from Coast Mortgage, totalling $148,300. From January 1973 to the middle of August 1973, respondent obtained

seven construction loans from Coast Mortgage, totalling $152,500.

On June 14, 1972, plaintiff's sales manager gave defendant a bid, open for a "reasonable time," for lumber and materials to be used in the construction of three homes planned by defendant. The bid was $1,954.67 per house. This bid was accepted, and the three homes were built within the stipulated "reasonable time." In September 1972, plaintiff's sales manager and credit manager agreed to extend the same bid price to six more homes defendant planned to build during 1972 and 1973.

On April 20, 1973, defendant paid his account with plaintiff in full. In May 1973, defendant made additional purchases from plaintiff, not included within the bid price agreement, totalling $600. This was the amount unpaid at the time plaintiff instituted its suit against defendant on July 20, 1973. Plaintiff claimed in its complaint, however, that defendant still owed $6,272.73 on his account.

On August 23, 1973, before the case came to trial, plaintiff's new credit manager filed two materialmen's liens in the sums of $2,693.59 and $3,172.53 against homes defendant had built and was building. Both claims of lien stated on their face they were for materials supplied to defendant during May 1973. Three days earlier the new credit manager had served three notices of claim of lien, as permitted by RCW 60.04.210, with Coast Mortgage Company. Two were in the same amount as the materialmen's liens and the third was for $406.61. Each of the notices claimed plaintiff was due these funds from defendant. Under RCW 60.04.210 (7), the duty of Coast Mortgage was to withhold these funds from the undistributed proceeds of construction loans granted to defendant. Some loan funds were withheld in response to the notices, although most had already been disbursed to defendant.

On September 28, 1973, appellant filed satisfactions for the materialmen's liens with the Pierce County Auditor. The notices of claim of lien were released by court order in December 1973. The purchaser of one of the homes liened

paid plaintiff $406.61, which had the effect of reducing defendant's debt to plaintiff to $193.39.

When Coast Mortgage received the notices of claim of lien in August 1973, it concluded that defendant must have misappropriated some of the loan funds theretofore disbursed on the three projects to which the notices were directed, rather than paying his subcontractors, such as plaintiff. Coast Mortgage then cancelled all advances to defendant on current and future loans "until this matter was resolved." This state of affairs between defendant and Coast Mortgage continued until December 1973 when the latter received the court order to release the withheld funds. Because defendant was without construction financing for 4 months, his homebuilding work was at a standstill.

Defendant filed a counterclaim on October 1, 1973, claiming damages resulting from the filing of the two materialmen's liens, notice of the filing being picked up for publication in the Tacoma Legal Index which regularly publishes such information, and from the serving upon Coast Mortgage of the three notices of claim of lien. Defendant claimed that neither the liens nor the notices were justified or lawful, and that they caused his business severe harm.

The trial court awarded plaintiff $193.39, the amount left unpaid on the May 1973 purchases from plaintiff by defendant.

The trial court, pursuant to RCW 60.04.210(7), also awarded defendant damages on his counterclaim totalling $27,256.30. This consisted of (1) $20,000 for lost profits for homes he was unable to build and sell during the 4 months Coast Mortgage withheld construction loan funds; (2) $5,000 for damages resulting from the filing and resulting publication of the materialmen's liens, and the filing of notices of claim of lien, including (a) inconveniences and delay suffered by defendant in connection with services rendered by a title insurance company in closing certain loans; (b) defendant's contractor's bond was cancelled and he was unable to procure another; (c) his reputation and

credit rating as a general contractor were injured; (d) respondent lost $850 out of $1,000 paid to Coast Mortgage to reserve $200,000 in permanent financing for his homebuyers, because the 4-month delay allowed him to use only 15 percent of this financing before it expired; and (e) defendant became obliged to pay real estate taxes of $1,000 on certain building lots, under the terms of a previously executed earnest money agreement, because he was unable to obtain construction loan funds on those lots before the agreement terminated; (3) $2,000 in attorney fees for prosecution of the counterclaim; and (4) $256.30 for the cost of depositions and a transcript of the oral argument in the trial court.

Plaintiff's first contention is the award of $20,000 in lost profits is excessive because only a maximum of $10,500 in lost profits can be proved with reasonable certainty. We do not agree.

RCW 60.04.210 (7) provides:

Any potential lien claimant shall be liable for *any loss*, cost or expense, including reasonable attorney fees, to the party injured thereby arising out of any unjust, excessive or premature notice of claim.

(Italics ours.) "Any loss" is broad enough to cover lost profits. If the amount of lost profits is established with reasonable certainty and substantial evidence shows the loss of those profits was a proximate result of plaintiff's unjust and excessive notices of claim of lien, then we must uphold the award. In *B & B Farms, Inc. v. Matlock's Fruit Farms, Inc.*, 73 Wn.2d 146, 150, 437 P.2d 178 (1968), the court held:

Where lost profits are recoverable, the amount of such loss must be established with reasonable certainty.

In *Blakiston v. Osgood Panel & Veneer Co.*, 173 Wash. 435, 439-40, 23 P.2d 397 (1933), the court stated:

[B]efore one can claim and recover future profits for the loss or injury to a business, it must be shown that the business was established and going, and not a mere experiment, or new adventure . . . And further, that the

damages for loss of anticipated profits of a business, while recoverable in any proper case, must be shown with a reasonable degree of accuracy.

*See* C. McCormick, *Damages* § 25, at 97 (1935).

The record provides substantial evidence defendant sustained a loss of profits of $20,000 on homes prevented from being built and sold during the 4 months his construction funds were withheld. Defendant's construction business was well established at the time his funds were cut off by Coast Mortgage. Defendant had shown a steadily increasing profit since 1972. The manager of the new residential construction department of Coast Mortgage Company testified that in addition to loans already approved for defendant at the time the notices were served, Coast Mortgage would have processed five to seven additional loans in the last 5 months of 1973. He also testified that in 1973 the range of the selling prices of homes built by defendant was $25,000 to $35,000, with a net profit of 4½ to 5½ percent. Mr. Bill Charnes, a real estate broker and defendant's listing agent, testified that based upon his knowledge of the housing market and his past experience, defendant would have built and sold 14 additional homes had his construction financing not been cut off. Defendant testified without objection he would have sold 10 to 12 homes in this period, at a net profit of approximately $2,000 per home. The above testimony is sufficient on which to base a finding that defendant sustained a loss of $20,000 in lost profits for the months in question.

Plaintiff contends the $5,000 awarded to defendant is not supported by substantial evidence. Plaintiff also contends damages for the loss of defendant's contractor's bond should not be allowed because at the time of suit defendant still owed plaintiff $600. We discuss both contentions, however, it is not explained how the second contention is responsive to the issue of damage.

Each of the constituent elements of this $5,000 award is supported by substantial evidence. We have held that "a finding of fact of a trial court will not be disturbed

if based on substantial evidence." *House v. Erwin*, 83 Wn.2d 898, 900, 524 P.2d 911 (1974).

The question of whether the law permits recovery of this portion of the damage award, even if the evidence is sufficient to prove the damage was sustained, has not been raised by plaintiff and therefore need not be considered by this court. *Talps v. Arreola*, 83 Wn.2d 655, 657, 521 P.2d 206 (1974). Nevertheless, we deem it appropriate to make some mention of this issue. It is clear from the trial court findings of fact and conclusions of law in light of his oral opinion that plaintiff's wrongful filing of the materialmen's liens was a substantial factor, together with the wrongful notices of claim of lien, in causing the damages for which the $5,000 award was made. This includes damages to defendant's reputation and credit rating, vital to a continuance of defendant's business. These damages were awarded pursuant to RCW 60.04.210(7), which allows for losses arising out of unjust, excessive or premature notices of claim, but does not purport to protect against losses arising out of the filing of wrongful materialmen's liens.

Nevertheless, any portion of the damages caused by the wrongful materialmen's liens may be upheld upon other grounds. Plaintiff's materialmen's liens were void, because they were obviously and willfully excessive—a misuse of the materialmen's lien statute—with resulting adverse consequences. *Knibb v. Mortensen*, 89 Wash. 595, 154 P. 1109 (1916). Moreover, the conditional privilege, which would normally protect a mechanics' lienor from liability based on the defamatory nature of the materialmen's lien, was lost here by its abuse. *See Michielli v. U.S. Mortgage Co.*, 58 Wn.2d 221, 361 P.2d 758 (1961); Restatement of Torts § 601, comment *a* (1938). The facts clearly show the liens were defamatory, and their publication tended "to harm the reputation of [defendant] [so] as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement of Torts § 559 (1938). An analogous case is *Michielli v. U.S. Mortgage Co.*, *supra*, in which plaintiffs were

in the business of constructing and selling homes. The defendants, a local mortgage company with whom plaintiffs had entered into construction loan contracts, told one of plaintiffs' creditors that plaintiffs were "very much in the hole" and "were going into bankruptcy." The court held:

> These defamatory words in themselves prejudiced the respondents in their business. The success of the business depended upon their honesty, solvency and credit. These words tended to damage their reputation regarding their honesty, solvency and credit, and, therefore, were slanderous and actionable *per se.*

*Michielli v. U.S. Mortgage Co., supra* at 227.

With regard to the contractor's bond, plaintiff's argument is not in point. Damages were awarded by the trial court for defendant's inability to procure another bond because of his damaged reputation, rather than for the initial loss of his bond.

Finally, plaintiff contends the award of $2,000 for attorney fees is erroneous, and the award of $204.30 for depositions and $52 for a transcript of the oral opinion is not permitted under RCW 4.84.080, and if at all only under RCW 60.04.210(7).

■ The basis for plaintiff's assignment of error with respect to attorney fees is not stated nor argued nor is there any reference to decisional or statutory law bearing upon the issue so made. Under these circumstances we have a right to consider the assignment of error waived. *Bruce v. Bruce*, 48 Wn.2d 229, 230, 292 P.2d 1060 (1956). In any case, the court did not err in awarding the challenged fees.

■ RCW 60.04.210(7) provides for "reasonable attorney fees" to the party injured because of "unjust, excessive or premature notice of claim." The test of liability is met here by unchallenged finding of fact No. 7. The statute makes provision for an award of attorney fees only with respect to notices of claim; it does not purport to allow an attorney fee award for defamatory materialmen's liens. The damages recoverable by joining the two theories of liability

discussed are closely interwoven. It is difficult, if not impossible to determine with precision what portion of those services were rendered in support of one theory or the other. However, it is possible to conclude from the record that the great bulk of the recovery results from the violation of RCW 60.04.210(7). Such recovery includes $20,000 for lost profits, $850 for loss of the deposit on the permanent financing and approximately $1,400 for real estate taxes. The legal services rendered in connection with the materialmen's liens was a relatively small portion of the entire legal services rendered. If, therefore, an approximately correct allocation were made of attorney's services rendered in enforcing RCW 60.04.210(7), and the resulting award required to be based solely on services so rendered, the award of $2,000 would be well within the trial court's discretion. *See In re Renton*, 79 Wn.2d 374, 377, 485 P.2d 613, 58 A.L.R.3d 196 (1971). We need not decide whether the award could properly be based upon the entire legal services rendered. There is, however, support for the view in the rationale of *Holcomb v. Bardill*, 214 So. 2d 522, 524 (Fla. App. 1968), that the court may make such an award.

The allowance for depositions and a transcript, also made pursuant to RCW 60.04.210(7), is in accord with the provision granting "any . . . cost or expense" arising out of the unjust notice of claim. The question of the taxability of the cost or expense is not the issue. *In re Estate of Statler*, 58 Wash. 199, 108 P. 433 (1910), held that Rem. & Bal. Code § 1313, providing that if a will is annulled the party who resists shall pay the "costs and expenses," did not mean only the usual statutory costs but contemplated "the allowance of the actual court costs and such expenses incurred in the prosecution or defense of the will as are reasonable and necessary." *In re Estate of Statler, supra* at 202-03. *See also In re Keystone Realty Holding Co.*, 117 F.2d 1003 (3d Cir. 1941); *Davidson v. Munsey*, 29 Utah 181, 80 P. 743 (1905). Plaintiff does not contend these costs are unreasonable or unnecessary. They will be allowed.

Defendant asks the trial court's award of attor-

ney fees for prosecution of the counterclaim be increased to provide for attorney fees on this appeal. He argues RCW 60.04.210(7)'s provision for "reasonable attorney fees" permits the award. We agree. A liberal construction of RCW 60.04.210(7) is necessary to insure that parties injured by wrongful notices of claim of lien will not be discouraged from pursuing their statutory right to damages. *See Puget Sound Mut. Sav. Bank v. Lillions,* 50 Wn.2d 799, 807, 314 P.2d 935 (1957); *Brandt v. Impero,* 1 Wn. App. 678, 463 P.2d 197 (1969). This court has inherent jurisdiction to fix the amount of attorney fees for services on appeal allowable by statute. *See Brandt v. Impero, supra* at 683. Defendant is awarded $1,000 for attorney fees on appeal.

Defendant also asks that an alleged error of the trial court in computing $193.39 due plaintiff from defendant be corrected. Defendant contends that in settling his account with plaintiff in April 1973 he overpaid plaintiff and that the $193.39 should be credited against this alleged overpayment. This contention is made for the first time on appeal. The trial court was not asked to adjudicate the matter of overpayment and did not do so. To permit the setoff claimed we would have to adjudicate on this appeal the validity of defendant's claim of overpayment. This we cannot do because plaintiff is entitled to a trial of the overpayment issue so that it can present evidence to refute defendant's claim. Under the circumstances the issue now raised for the first time on appeal will not be considered. *Peoples Nat'l Bank v. Peterson,* 82 Wn.2d 822, 514 P.2d 159 (1973).

Affirmed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.